# CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

## OCTOBER TERM, 1909.

*(Continued from Volume 222.)*

THE STATE ex rel. SCHOOL DISTRICT OF MEMPHIS v. JOHN P. GORDON, State Auditor.

**In Banc, November 8, 1909.***

1. **MANDAMUS: Pleading.** Where the respondent in a mandamus case enters his appearance, waives the alternate writ, and demurs, the petition stands as and for such writ.

2. **BONDS: Schools: Double Proposition.** Where the board of directors of a town school made an order reciting that it was necessary that a schoolhouse be erected in the first ward, and that an addition and improvements be made to the schoolhouse in the second ward, a recital in the order calling the election and in the election notice: "For the purpose of submitting to the qualified voters thereof a proposition to incur an indebtedness for said school district in the sum of $22,500 for the purpose of using $20,000 of said amount in building a schoolhouse in the first school ward of said district and furnishing the same, and $2,500 of said amount to be used in building an addition to and improving the schoolhouse in the second ward of said district," is not double, and the voters in voting for or against the loan do not by one vote vote for two separate propositions.

---

* **Note.**—Decided July 9, 1909. Motion for rehearing filed; motion overruled November 8, 1909.

(1)

State ex rel. v. Gordon.

3. ———: ———: ———: **Similar to Double Title in Legislative Bill.** The reasons underlying the constitutional interdiction that "no bill shall contain more than one subject, which shall be clearly expressed in its title," are precisely the same as those against doubleness in a proposition to be voted upon by the people; and the adjudications of the courts upon the meaning and purposes of that provision as to titles of legislative bills are applicable in the consideration of a proposition to increase the indebtedness alleged to be double, submitted to the voters of a municipal corporation. The object, in either case, is to prevent incongruous matters from being voted on together.

4. ———: ———: ———: **Statutes as Guide.** The school statutes are the guides to courts and school boards; they are charts to guide plain, matter-of-fact, every-day folk, and the courts in interpreting them should keep that fact in view.

5. ———: ———: ———: ———: **Schoolhouse in Two Wards.** One would naturally expect that if the Legislature intended that a proposition to build a schoolhouse in each of two wards, when submitted to the people, should be split in twain, it would have said so. And the same is true as to the matter of building a schoolhouse in one ward and furnishing it, and making an addition and improvements to a schoolhouse in another ward. But as the statutes do not so require, and the propositions are not incongruous, the courts should not read such a requirement into them.

6. ———: ———: ———: **Multiplicity of Details.** In submitting to the voters a proposition to increase the district's indebtedness, it is not necessary to so submit it that there may be a separate vote on each divisible matter of the public improvement. No such absurdity of detail is required by the statutes. If all are congruous parts of a general improvement, and all are germane and related, such as schoolhouses, sites and furniture, the proposition is not double, and there need be no separate vote on each, but one vote to issue bonds of one amount for the whole improvements may be submitted.

7. ———: ———: ———: **Liberty of Choice.** The voter's liberty of choice may be reasonably restricted to a rounded proposition as distinguished from the elements of that proposition.

### Per GRAVES, J., dissenting.

1. **BONDS: School: Double Proposition: Rule of Construction: Similarity to Title of Legislative Bill.** A proposition submitted to voters having for its purpose the exercise of the taxing power, cannot be determined to be double or single by the same rule of construction by which the title to a legislative bill is determined to be double or single. The courts in determining doubleness in titles to legislative bills do so under a constitutional

mandate, but they are not so restricted in determining double-ness in propositions to increase the public indebtedness sub-mitted to the people. Mandates of the Constitution must be obeyed by the courts, however unreasonable; but doubleness in a proposition to create a public debt submitted to the voters did not have its origin in the Constitution, and courts in adjudicat-ing the question have the constitutional authority to determine the fairness of the proposition and to make such rulings as will prevent a fraud upon the taxpayers. Aside from this, the title to a legislative bill is only expected to be a fair index to the content of the bill, and is not the bill itself; whereas, the ques-tion of whether or not the subject-matter is germane to a prop-osition submitted to the voters whose purpose is to call into exer-cise the taxing power, is not for consideration. There can be no such thing as a germane matter to the proposition to be voted upon by the people. The two questions are akin only so far as the purpose of a consideration of either is to suppress fraud.

2. ————: ————: ————: **When United: To Coerce Accept-ance.** Two propositions to create a public indebtedness sub-mitted to the voters, cannot be united in the submission so as to have one expression of the vote answer both propositions, as voters might thereby be induced to vote for both propositions who would not have done so if the questions had been submitted singly. The taxing power should be exercised with the utmost openness and fairness, and without any opportunity of carrying one distinct matter through by the aid of another. The building and furnishing of a schoolhouse in one ward, and the making of an addition and improvement to an existing schoolhouse in another ward, are distinct matters, and the voters should be given the opportunity to vote on them singly.

3. ————: **Not Responsive to Proceedings.** The school board directed that there be submitted to the qualified voters a prop-osition to incur indebtedness and issue bonds in the sum of $22,500, to be used for a schoolhouse in the first ward and fur-nishing the same, and in making an addition and improvements to the schoolhouse in the second ward. The published notice said nothing about furnishing the schoolhouse to be built in the first ward. The board's order for issuing the bonds made after a majority of the voters had voted singly "for the loan" said nothing as to dividing the fund into two separate purposes, and each of the 45 bonds themselves recites: "This bond is one of a series of like tenor issued for the purpose of providing funds for the erection of a school building in and for said school district." *Held*, that the recital in the bonds is at variance with the proceedings, and the State Auditor should not be compelled to certify that all the conditions of the contract under which they were ordered to be issued have been complied with.

State ex rel. v. Gordon.

## Mandamus.

ABSOLUTE WRIT AWARDED.

*J. M. Jayne, Lozier & Morris* and *A. W. Walker* for relator.

(1) Section 9752, Revised Statutes 1899, contemplates only one vote and one loan for such buildings and furnishings as may be needed at one time in the judgment of the board of directors. (a) The statute says schoolhouses, not schoolhouse. (b) The section, when treating of one loan and one set of bonds, speaks of bonds ''for the erection of one or more schoolhouses to be erected on the same or different sites.'' (c) The ballot must read simply ''For the Loan'' or ''Against the Loan.'' (2) The following authorities sustain the relator's position: (a) In People v. Caruthers School District, 102 Cal. 184 (36 Pac. 396), the questions of buying a lot, of building a schoolhouse and of issuing bonds were submitted in one proposition. Held good. (b) In People v. Sisson, 98 Ill. 335, the questions of voting for a schoolhouse site and of issuing bonds to erect or purchase a schoolhouse were submitted in one proposition and it was held good. (c) In Hubbard v. Woodsum, 32 Atl. 802, questions of constructing different county buildings on new site and of borrowing money to pay therefor were submitted in one proposition. Held unobjectionable. (d) In Potter v. Lainhart, 44 Fla. 647 (33 So. 251), questions of erecting courthouse, of erecting jail and of constructing roads were submitted in one proposition and held good. (e) In Wimberly v. Twiggs County, 116 Ga. 50 (44 S. E. 478), questions of building and furnishing courthouse and of building jail were held properly submitted in one proposition. (f) Petros v. City of Vancouver, 13 Wash. 423 (43 Pac. 361), holds that questions of bonds for light purposes and for general purposes were properly submitted in one proposition. (g) In Kemp v. Hazelhurst, 80 Miss. 443,

a proposition to issue bonds for erecting light plant and also for waterworks was held not double. (h) See references to State ex rel. v. Allen, 178 Mo. 555, and State ex rel. v. Wilder, 200 Mo. 97, under paragraph 3. (3) The respondent relies upon the following authorities to support his contention that the notice contained two separate and distinct questions in one proposition: (a) State ex rel. v. Allen, 186 Mo. 673, in which the city of Bethany submitted a question of issuing bonds for the construction of a city hall and the question of issuing bonds for improvement of waterworks and electric light plant in the same proposition. Held to contain two independent propositions. The questions were in every sense separate and distinct. They belonged to separate departments and were maintained out of different funds. They were independent of each other so that one might have been carried and the other defeated without embarrassment. (b) State ex rel. v. Allen, 178 Mo. 555, in which the proposition submitted was to issue bonds ''for the purpose of constructing, maintaining and operating or purchasing an electric light plant.'' Held not to contain two propositions. There was one purpose, light. The question of maintenance is not involved in the case at bar. Section 9789 expressly makes all constructions and repairs of all school buildings payable out of the same building fund. This case clearly supports relator's position. (c) State ex rel. v. Wilder, 200 Mo. 97, authorizes bonds voted under one proposition for a waterworks and electric light plant, where the plants were to be connected and conducted by one management. In principle this case also clearly supports relator's position. (d) In McBryde v. City of Montesano, 7 Wash. 69, the question of funding an old debt of $20,000 and the question of borrowing $5,000 for future use were submitted in one proposition. These questions were in every sense separate, distinct and independent and the submission was properly held

bad. (e) In Gray v. Mount, 45 Iowa 591, the proposition was to devote a certain fund to the erection of a court house and a county high school. The two purposes were in no way related and were entirely independent and the submission improper. (f) In City of Denver v. Hayes, 28 Colo. 110, one submission set forth eleven purposes, many of which were widely separate and distinct from each other. Submission therefore held bad. (4) However, respondent seems to rely mainly upon the recent case of State ex rel. v. Wilder, 217 Mo. 261, decided by this court, to sustain his position. The proposition in that case was to issue bonds for a sanitary sewer in one part of the city of Joplin and a storm sewer in another part. The submission was held bad as containing two propositions. There is a wide distinction, however, between the work of constructing and maintaining the sewers of a city and that of constructing and maintaining the school buildings of a district. Sewers are local improvements. They may be maintained by local assessment, generally upon the theory that neighboring property is peculiarly benefited. The owners of property in the locality of the sanitary sewer were in no way interested in the storm sewer, and *vice versa.* The two sewers were not related to each other, but in fact were entirely independent of each other. School buildings, on the contrary, are not local improvements. They cannot be erected or maintained by local assessment. Every citizen of a district is interested in every school building of the district. All buildings are related to the others. They are part of one system, whether located together or at distances from each other. They are correlated and dependent upon each other. They are under one superintendent, supported out of the same funds, and, in fact, are one enterprise, as much as if constructed into one building. The Memphis School Board knew how much room their schools needed. They knew in what shape that amount of room would

best serve the district. The ward building and the addition should have been both carried or both defeated. It would have been a disadvantage to the district to have voted the addition and voted down the new building. For, if the ward building had been voted down, then the addition proposed should have been larger, so as to furnish more of the room desired, and *vice versa*. The questions were mutually dependent and they could not be separated without endangering the welfare of the district.

*Elliott W. Major,* Attorney-General, *Chas. G. Revelle* and *James T. Blair,* Assistant Attorneys-General, for respondent.

(1) Two separate and distinct propositions were embraced in the question submitted to the voters. The order of the board and the notice of election provided for the submission of the question of authorizing a loan, to be evidenced by bonds, in the sum of $22,500, of which (a) $20,000 was to be used for the purpose of erecting a schoolhouse in one ward of the school district and (b) the residue, $2,500, was to be used for the purpose of building an addition to a schoolhouse already erected in another and different ward. The contention of respondent is that each of these propositions was distinct in character from the other, and that they could not be yoked together and utilized jointly to "pull through" the proposition for the loan. State ex rel. v. Allen, 186 Mo. 674; State ex rel. v. Wilder, 200 Mo. 103; State ex rel. v. Wilder, 217 Mo. 261. In the case now under discussion there are clearly two purposes to which the proceeds of the bonds are to be devoted: (a) The erection of a school building in the first ward, and (b) the building of an addition to a school building in the second ward. The reason of the rule requiring the submission of each proposition separately makes the applicability of the rule to this case clear enough. "The will of the people

expressed by the adoption of the proposition for the
borrowing or expenditure of money  .  .  .  is the law
of the land.  The force and effect thus imparted to
their will, is intended to be given to that will freely
expressed.  .  .  .  If the majority of the votes of the
people is in favor of the adoption of the proposition,
why should it not be declared to be the law and carried
into effect, as provided for and intended by the stat-
utes?  On the other hand, why should the force and
effect of law be given to the vote adopting any proposi-
tion, which has not rested solely on its own merits for
the favor it has obtained at the hands of the people,
but which may have been assisted to the votes it re-
ceived, by other questions with which it was so con-
nected as that it must stand or fall with them?''  Mc-
Millan v. County Judges, 3 Iowa 320; Gray v. Mount,
45 Iowa 595.  This is the crux of the matter—the voter
is deprived of his liberty of choice.  That the question
of issuing bonds to secure money to build a school-
house in the first ward in Memphis could have been
submitted as a single proposition cannot be doubted.
So, also, the proposition as to issuing bonds whose
proceeds were to be devoted to improving the school-
house in the second ward, could have been separately
submitted.  That a voter could reasonably have desired
to vote for either and against the other cannot be
doubted.  At least he might have voted for either and
against the other if the propositions had been separate-
ly submitted.  But the order of the board in yoking
the two propositions together (''resembling the com-
mon device of an auctioneer in disposing of worthless
goods, whereby a good article is mingled with them
and made to draw bids''), denied the voter the right
to choose either and reject the other, but required him
to take both or neither.  City of Denver v. Hayes, 28
Colo. 114; Supervisors v. Railroad, 21 Ill. 373; Leaven-
worth v. Wilson, 76 Pac. 401.  (2) (a) Relator con-
tends, it seems, that the purpose for which the money

was to be used, though embraced in the board's order and in the notice given pursuant thereto, is no part of the proposition submitted, but merely so much surplusage. The courts have anticipated this contention. "The question to be submitted to the voters was not simply whether it was their will to appropriate the fund; but there must be an object for the appropriation in order to constitute the proposition to be voted upon. The object is of the essence of the proposition. This cannot be denied. The appropriation for a given object is the proposition submitted." Gray v. Mount, 45 Iowa 595. The statute restricts the power vested by the election in the board to one "to borrow money in the name of said district, to the amount and for the purpose specified in the notices aforesaid." Section 9752, R. S. 1899; McMillan v. Judges, 3 Iowa 322; Constitution, art. 10, sec. 20; art. 10, secs. 11 and 12. (b) Relator says that the school buildings, sites, property, etc., constitute "one plant," thus endeavoring to get within the decision in the Chillicothe case. The different city buildings and utilities are as much a "single plant" as are the different schoolhouses in separate wards. The Chillicothe case is directly in point against relator on this head, since that case holds merely that a combined waterworks and electric light plant is a single institution, and leaves no doubt that had the bonds been for two separate institutions they would have been held invalid. (c) Relator contends that the "Board knew how much room their schools needed. . . . The ward building and the addition should have been both carried or both defeated." This is relator's real position, i. e., that it is the judgment of the board which should govern. The Constitution requires that the judgment of the voters shall be taken on the subject. If school boards can thus indirectly determine, measurably, what loans shall be authorized, the purpose of the Constitution is to that extent evaded. It is for the voters to say whether either, both or

neither of the propositions shall carry and it is not within the province of the board, in any manner or to any extent, by the complexity of the proposition submitted, to hamper the free expression of the will of the electors. (3) The bonds issued by relator, according to the petition in this case, on their face showed an abandonment of one of the purposes for which the issue was authorized. As intimated in the Florida case cited by relator, the bonds should conform to the proposition submitted, and should be issued for the purposes for which they were authorized by the voters. This is another reason against the registration of these bonds.

LAMM, J.—The State Auditor refuses to register and *vise* under section 5167, Revised Statutes 1899, 45 school bonds, 5-20's, each of the denomination of $500, dated May 1, 1909, interest at 5% payable semi-annually evidenced by coupons attached, payable at the Mercantile Trust Company in the city of St. Louis and issued by the School District of Memphis, Missouri, for building purposes.

The Memphis school district sues out an alternative writ of mandamus. The Auditor enters his appearance through Mr. Attorney-General and, waiving the alternative writ, demurs. In this condition of things the petition stands as and for such writ.

The cause being finally submitted on demurrer, we are called upon to determine but a single question, indicated by the second specification of the demurrer, *viz.*: "Because the petition upon its face discloses that two separate and distinct propositions were submitted and voted on jointly."

The petition shows that the proceedings of the school board, the calling and notice of the election, the appointment of judges and clerks, the election itself, the canvass and formulation of the returns, showing the submitted proposition carried by a vote of

349 "for the loan" to 60 "against the loan," and the execution of the bonds and coupons, were in due form. Further, that the proposed indebtedness ($22,500), with all other, does not exceed 5% of the taxable property in the district, as shown by the last assessment.

The allegations relied upon to show the doubleness of the proposition are:

*First,* an order by the school board reciting that it was necessary for the welfare of the inhabitants of the district that a schoolhouse be erected in the first school ward, and an addition and improvements be made to the schoolhouse in the second school ward.

*Second,* an order that an election be called at a specified date and place, reciting among other things, as follows: "For the purpose of submitting to the qualified voters thereof a proposition to incur an indebtedness for said school district in the sum of $22,500 for the purpose of using $20,000 of said amount in building a schoolhouse in the first school ward of said school district and furnishing the same, and $2,500 of said amount to be used in building an addition to and improving the schoolhouse in the second school ward of said district," etc.

*Third,* a similar recital in the election notice.

Relator's counsel argue that the proposition is single and within the purview of pertinent statutes relating to issuing school district bonds. Mr. Attorney-General, *contra.*

Relator is organized under article 2 of chapter 154, Revised Statutes 1899, as a town school district, with the special privileges enumerated therein. Section 9865, Revised Statutes, ordains that the school board, when sufficient funds have been provided, shall establish an adequate number of primary or "ward schools" and for this purpose shall divide the district into "school wards" and fix the boundaries thereof. Such board is authorized to select and procure a site

in each newly-formed ward and erect a suitable school building therein and furnish the same.

If the money to build and furnish the schoolhouse be not on hand it may be raised by direct taxation under the provisions of section 9778, provided such is the judgment of the school board and provided the voters of the district authorize the increased tax under that section.

However, if the money be not on hand the school board may borrow money under section 9752, first submitting the proposition to the voters. That is the section under which relator acted. It provides as follows (omitting matter not material): ''For the purpose of erecting schoolhouses and furnishing the same in cities, towns and school districts, the board of directors shall be authorized to borrow money, and issue bonds for the payment thereof, in the manner herein provided. The question of loan shall be decided at . . . a special election to be held for that purpose. . . . The qualified voters at said election shall vote by ballot. Those voting in favor of the loan shall have written or printed on their tickets, 'For the loan'; those voting against the loan, the words 'Against the loan'; and if two-thirds of the votes cast shall be 'for the loan', the district board shall be vested with the power to borrow money in the name of the district, to the amount and for the purpose specified in the notices aforesaid. . . . When bonds are voted under this section for the erection of one or more schoolhouses, to be erected on the same or different sites,'' etc.

In Richardson v. McReynolds, 114 Mo. 641, it was held that under the foregoing section, there was no authority to issue bonds to purchase a schoolhouse site and that funds for such purchase could be accumulated only on direct taxation and by the tax-gatherer. To remedy this condition, in 1903 the General Assembly enacted a new section, strictly *in pari materia,* numbered 9752a (Laws of 1903, p. 266) reading: ''The pur-

pose for which an election may be called to borrow money and to issue bonds therefor under section 9752 of this chapter may, in the judgment of the school directors include that of purchasing schoolhouse sites, and the purpose of which the annual rate of taxation may be increased under and in the manner provided for by section 9778 of this chapter may, in the judgment of said school directors, include that of purchasing school building sites and furnishing said buildings.''

The foregoing sections (9752 and 9752a) grant the statutory power to borrow money for the purpose of building schoolhouses and furnishing the same and purchasing school sites. They are a code unto themselves.

The right determination of the case calls for:

(a)  An examination of the reasons supporting the proposition that questions submitted to voters should be single and not double;

(b)  A construction of sections 9752 and 9752a, *supra*, not hitherto under interpretation on the point now up;

And (c) to these may be added whatever aid may be borrowed by parity of reasoning from adjudicated cases in this and other jurisdictions.

Attending to the foregoing, we conclude the proposition submitted to the voters of the Memphis school district was well enough. This because:

(1)  The rule of law that a proposition submitted to a vote of the people for their adoption must be single (as "single" is defined in the law), finds voice in our constitutional provision (Constitution, art. 4, sec. 28) providing that: "No bill . . . shall contain more than *one subject,* which shall be clearly expressed in its title." And the reasons underlying that constitutional interdiction are precisely the reasons supporting the proposition asserted by our learned Attorney-General in the case at bar. Heretofore the principle

has not been frequently before this court as applied to propositions voted by the people, yet the constitutional provision has been under exposition many times, and the correct interpretation of that provision is not only well established, but is germane to the case in hand; since it is permissible for courts to reason from similars to similars.

At the threshold of the case, then, lies an investigation of the interpretation put upon said constitutional provision. In State v. Miller, 45 Mo. l. c. 497, in defining and illuminating the purpose, tenor and scope of that provision it was well said: ''The courts in all the States where a like or similar provision exists have given it a very liberal interpretation, and have endeavored to construe it so as not to limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law. An exact and strict compliance with the letter would render legislation almost impracticable, and would lead to a multiplicity of bills which would make our statutes ridiculous. The principle is a correct one, and the intention was good; it was designed to strike down a most vicious and corrupt system which prevailed in our legislative bodies, and which operated as a surprise, and was productive of fraud and plunder. It was intended to kill 'log-rolling' and prevent unscrupulous, designing men and interested parties from dexterously inserting matters in the body of a bill, of which the title gave no intimation of the true character, or of comprising subjects diverse and antagonistic in their nature, in order to combine in its support members who were in favor of a particular measure, but who could not carry their object without an agreement to go for some other measure, when neither, on its own merits, could command the requisite majority.''

Following these general observations it was said in that case that if the matters embraced in the bill were congruous and had legitimate connection or relation to

each other, the generality of the title would not make the bill objectionable; that if there was but one subject, the mode in which the subject is treated and the reasons which influence the Legislature do not make the bill bad; and that the provision does not call for a too vigorous and technical construction. This, because the application of rules of nice and fastidious verbal criticism would often frustrate the action of the Legislature without fulfilling the intention of the framers of the Constitution. Accordingly it was held that an act entitled, "An act to prevent the issue of false receipts or bills of lading, and to punish fraudulent transfers of property by warehousemen, wharfingers and others," could include under the designation of "others" all persons obtaining the possession of goods and having the *indicia* of ownership from transferring, hypothecating or pledging them in fraud of the rights of the seller or vendor—the act being meritorious and being intended to promote honesty and prevent fraud and the subjects having a natural connection with one another.

Running through a long line of cases the reasoning adopted and propositions ruled in State v. Miller have been steadily approved and followed. For example, in State ex rel. v. Miller, 100 Mo. 439, it was ruled that where all the provisions of a statute fairly relate to the same subject, having a natural connection with it, and are the incidents or means of accomplishing it, then the subject is single. Accordingly it was held that an act entitled, "An act fixing the number of directors in public school boards in certain cities, and providing for election of such directors, and for districting said cities therefor," meets the requirements of the provision.

To the same effect are Ewing v. Hoblitzelle, 85 Mo. 64; State v. Morgan, 112 Mo. 202; Lynch v. Murphy, 119 Mo. 163; State ex rel. v. Heege, 135 Mo. 112;

State v. Bixman, 162 Mo. 1; Elting v. Hickman, 172 Mo. 237.

In other cases we have resolved that the object of the constitutional provision was to prevent incongruous matters being voted on together. That if the title is not misleading and is not designed as a cover to vicious or incongruous legislation it will do, although it does not descend to details. And in other cases we have resolved that matters germane to the subject do not constitute doubleness, but that matters having no material relation to each other are double in the sense interdicted. [See a learned note under section 28, article 4, Constitution, p. 186, vol. 1, Mo. Ann. Stat., 1906, where many authorities are collated.]

Recurring now to what has been already said, to-wit, that the constitutional inhibition against doubleness in a bill to be voted by the lawmaker is one and the same in principle with the rule of law against doubleness in a proposition to be voted by the people, it is self-evident that the mischiefs struck at by that rule against doubleness invoked by respondent to invalidate the bonds of the Memphis school district are of kith and kin to the mischiefs struck at by the constitutional provision we have been considering; and courts deem them one and the same. Thus: In Hubbard v. Woodsum, 87 Me. l. c. 95, a proposition alleged to be double was put to a vote of the people and PETERS, C. J., says: "The idea on which this contention of the complainants is grounded is found in the construction which courts have given to constitutional provisions existing in some of the States prohibiting their Legislatures from embodying two distinct and independent, private or local subjects in one act. In such States two or more schemes of private legislation cannot be grouped together. The object is to prevent a combination of different interests where each one may help the other; 'to prevent,' as FOLGER, J., expressed it in a New York case, 'the joining one local subject with another

or others of the same kind so that each subject should gather votes for all.' "

The vote of the people on a proposition stands as in the nature of a legislative act. A successful vote on a proposition is in the nature of the adoption of a law. The proposition when adopted becomes, in a sense, law—a local act; therefore, as already pointed out, the method of its adoption is within the principle of the constitutional provision controlling legislation. [McMillan v. Lee County and Boyles, 3 Ia. 311.] Cases may be found whose facts called for judicial denunciation, where odious were united to good propositions in order to pull the former through and where it has been ruled that such conduct amounted to "jockeying" and "logrolling" and unjust and unfair "maneuvering"—in short, a fraud upon the people. [Supervisors, Fulton County v. Railroad, 21 Ill. 1. c. 373 *et seq.*] In another case (Gray v. Mount, 45 Iowa 1. c. 595), the facts denounced were characterized as "the common device of an auctioneer in disposing of worthless goods, whereby a good article is mingled with them and made to draw bids, or the cunning tricks of gamesters to induce wagers of the unwary." But all these similes, metaphors and comparisons justify themselves in connection with the concrete facts discussed in the particular case, and I have seen no case that discusses on principle the doubleness of a proposition submitted to a vote, which attempts to apply any different reasoning or principle than is applied to the constitutional provision limiting a legislative act to one subject. We are free then to borrow and apply the doctrines announced in the one to the other.

It has been decided that in applying the constitutional provision against doubleness each case is singular to itself and must stand or fall on its own facts. Says Burgess, J., in Witzmann v. Railroad, 131 Mo. 1. c. 618: "Adjudicated cases do not, as a general

rule, afford us much assistance in passing upon questions of this character, other than in a general way, as each case must be adjudged according to its own peculiar facts and the directness or remoteness, as the case may be, of its provisions to matters in consonance with its title.''

(2)   Referring now to section 9752, to cognate sections and provisions in the Constitution, it will be seen that the controlling thought is the increase of taxation beyond the even, modest level of conventional and prescribed statutory rates.   Bonds at end mean taxation.   Taxation is a tender and jealous point. Therefore, the school law has preserved to the people a right to a direct vote (not on *any* tax, but) on an increase over the statutory level implied by the issue of bonds—that is, the people vote the bonds, and under the Constitution and law the school board and the taxing officers must correspondingly increase the tax rate.

Under our statutory scheme it is apparent that the division of a town district into school wards (thus necessitating more than one schoolhouse) is not deemed a matter of such quick and personal concern to the individual voter as is the increase in tax rates.   The same may be said of the improvements of this or that schoolhouse, and of the number of schoolhouses built in a school district.   The law contemplates that (absent an increase of taxation) the school patron and the taxpayer exercise only a representative voice in such matters and must rest upon the informed judgment of the school board in that behalf.   Of necessity this must be so.   The members of such boards are charged with that discretion.   They are selected and elected by the voters personally because of their stability and wisdom of judgment in that behalf and because, presumably, they have a live and abiding affection for the common schools.

Accordingly if no increase of taxation be necessary and if the district has accumulated by gift, by sale of other school property or otherwise through routine of taxation, a surplus sufficient to buy sites, build schoolhouses and furnish the same in the school wards of a town school district, the statutes do not contemplate that the voter should be called upon for a direct vote on building one or more ward schoolhouses, or furnishing the same or in buying schoolhouse sites. The board of directors may move and act on their own initiative—*contra* when money is to be borrowed or an extra tax levied.

Nothing we say is to be construed as meaning that the object to which the borrowed money is to be appropriated is not an integral part of the proposition to be submitted to a vote. Necessarily it becomes an integral element in order to make the proposition intelligible and carry information to the voter. [City of Denver v. Hayes, 28 Colo. 110; Thompson Houston Electric Co. v. City of Newton, 42 Fed. 726-7.]

Manifestly the natural place a lamp should be hung out to guide school boards and courts to the right goal of interpretation is in the very statute itself. These statutes are not charts to those learned and skilled in subtle refinements and dialectics, but charts to guide plain, matter-of-fact, every-day folk. That fact, I think, is the master-key to unlock the door of correct interpretation.

Attending to the statutes, one would naturally expect that if the Legislature intended the proposition of building a schoolhouse in each of two wards should be split in twain it would have said so; and if the matter of furnishing the schoolhouses when built was a separate and distinct proposition from building them, it should have said so, and if the proposition of buying schoolhouse sites on which to erect the houses was a distinct and independent proposition from building and furnishing, it would have said so. But sections

9752 and 9752a say nothing of the sort. No word in any of them squints that way. To the contrary they speak of *schoolhouses* (not one, but all necessary), of *school sites* (not one, but all requisite) and the furnishing of schoolhouses, conjointly, in the plural, not as detached, independent and incongruous propositions but as related parts of one subject, not as a double subject but as a single subject. Accordingly we should hesitate long before we split that subject by driving a wedge of interpretation between its elemental parts, on the theory the parts are incongruous—detached and independent propositions not to be joined within the principle interdicting doubleness.

We doubt not many bonds of Missouri school districts are outstanding, voted on the theory that building two or more schoolhouses, buying two or more sites and furnishing houses built on those sites, was a single statutory subject-matter, properly put to be voted up or down as one proposition. To place a bar-sinister across such bonds is a matter of so much gravity to the commercial honor of the State that courts should approach that result allowing every reasonable intendment in favor of validity and with something of the same hesitancy they approach the determination of the unconstitutionality of a statute; for, as said, the vote of the people stands in just relation to the enactment of a statute, and the proposition carried stands in just relation to a local law—they stand or fall on the same character of reasoning.

(3) Any whole or entire subject or proposition may be composed of parts and any part by further refinement may be found to be composed of other parts. To illustrate: Let us suppose that any use of school funds in the improvement of a school building could be made only on a vote of the people. The school board conclude that two windows are necessary in a schoolhouse. Are two windows a single or a double subject or proposition? If double then is one

window a double or a single proposition? Mark, a window necessitates a hole in the schoolhouse wall. It means sash, glass, a window frame, casing, weights, pulleys, catches, etc. It is not insupposable that the voter might have his own ideas about the number of panes of glass to go into the window and his own idea on each of the elements making up a window including the hole in the wall. Is each of these elements to be submitted to the voter as a separate proposition? It is obvious that such refinement produces ridiculous results and is analysis run mad, precisely as pointed out in the Miller case in 45 Mo., *supra*. [See in this connection the reasoning of PETERS, C. J., in Hubbard v. Woodsum, *supra*.]

If the law be as contended by the learned Attorney-General then a town school district having no site in either of two wards and no schoolhouse and no plumbing, furnace or aught else to furnish the same, faces several independent propositions each to be submitted as single. For instance:

(a)  Shall the district issue bonds to buy a schoolhouse site in ward one?

(b)  Shall it issue bonds to buy a site in ward two?

(c)  Shall it issue bonds to build a schoolhouse in ward one?

(d)  Shall it issue bonds to build a schoolhouse in ward two?

(e)  Shall it issue bonds to furnish the schoolhouse in ward one when built?

(f)  Shall it issue bonds to furnish the schoolhouse in ward two when built?

Now it is obvious to my mind that no such absurd excess of detail was within the legislative intent; nor is it "logrolling," or "jockeying," or "maneuvering," or using the arts of the "auctioneer," or "gamester," to unite those parts into one sensible, congruous whole, and to put that whole to the people as one subject. No

part of that general subject can be said to be odious or unworthy. Every part is germane and related. Every patron in the Memphis school district is interested in the uplift of the schools of the entire district —the high school being the cap sheaf of the system and the ward schools feeding into that. The board has determined, as it had the right to do, that the general improvement of school facilities was necessary; and sites, houses and furnishing are but correlated and connected parts (incidents and details) of the rounded improvement. Of course, in the proposition submitted there was no element touching the purchase of schoolhouse sites, but what is said is applicable to a proposition absent that element.

Stress is laid by way of argument on preserving the liberty of choice of the voter. As to that we say: Liberty of choice is excellent and quite worthy of the law's protection. But, observe, the prime thing in sections 9752 and 9752a, is schools, schoolhouses, and liberty of choice is directed to providing the wherewithal to increase such school facilities as are determined necessary by the school board—not otherwise. Those acts relate to the business administration of school laws and that central idea must not be obscured by side issues. We make no manner of doubt that the liberty of choice to the individual voter may be gently and reasonably restricted to a rounded proposition as distinguished from the elements of that proposition. No other course is feasible or likely to result practically and sensibly. To illustrate: the slips and inadvertences of individual voters are proverbial. Let us suppose that propositions $a$, $b$, $c$, $d$, $e$ and $f$ are printed on a ballot with the words "for the loan" and "against the loan" after each proposition. The collection of those phrases on one ballot is confusing to the voter. So a failure to erase is fatal to the vote. Now, suppose $b$ and $c$ be voted and $a$ fail, how stands the mat-

ter? Or that *a* and *c* are voted and *e* fail, what then? Or that *a* and *e* are voted and *c* fail?

Other hypotheses of the same sort and leading to the same abortive end might be put. Or suppose the group of propositions relating to Ward 1 succeed and the group relating to Ward 2 fail? In that event there would not be sufficient school facilities for the district and the school board might better build a larger and more expensive schoolhouse in Ward 1 to supply the school wants, so that the proposition as to Ward 1 is no longer sensible. *Vice versa,* the same might be true if the proposition as to Ward 1 fail and that as to Ward 2 carry.

We are of the opinion that the statutes in hand contemplate that the liberty of the voter should be exercised on the concrete whole encompassed by the words of the statute, if, in the judgment of the school board, the plan as a whole was a proper improvement to challenge a vote of the district.

There can be no doubt that if the proposition we are considering was an act of the Legislature instead of a proposition voted by the people, the act would stand as against the criticism leveled at it in the case at bar. May we deal more coldly and fastidiously with the people acting as sovereigns than we do with the lawmaker moving in his orbit? If so, why?

(4) The ruling announced is well within precedents. Thus: In State ex rel. Columbia v. Allen, Auditor, 183 Mo. 283, it was ruled that a proposition to purchase an existing waterworks and light plant *and* to provide for their extension so as to meet the increased needs of the inhabitants was a single subject and might be voted on as such. It can be readily seen that by superfine analysis that proposition could have been split into parts and that voters might well entertain a diversity of views on one or another part.

In State ex rel. Canton v. Allen, Auditor, 178 Mo. 555, it was ruled that an order to test the sense

of the voters on the subject of issuing bonds for the purpose of constructing, maintaining and operating *or* purchasing an electric light plant to supply the town and all persons and parties therein with light, was a single proposition as singleness is defined and contemplated by the law. It can readily be seen that one of the parts of the foregoing proposition was whether the city of Canton would go into the manufacture and sale of electricity to consumers. Another was whether they should purchase a plant outright. Another was whether they should construct a plant from the ground up. All these parts were held to constitute one subject and one proposition and that holding cannot be justified unless we apply the test that the parts are related, congruous and germane to one general municipal subject, to-wit, light and bonds to pay therefor.

In State ex rel. Bethany v. Allen, Auditor, 186 Mo. 673, it was ruled that a proposition to issue bonds for the construction of a city hall and for the improvement of a waterworks and light plant was double. Obviously the parts of that proposition were not germane or related and were incapable of becoming one single municipal subject. There was no natural connection between a city hall and a municipal water and light plant. It was an omnibus bill pure and simple.

In State ex rel. Chillicothe v. Wilder, Auditor, 200 Mo. 97, a proposition to issue bonds for a waterworks *and* electric light plant was held single. The bonds being invalidated for other reasons, it was recommended that in the next vote the form of the proposition be changed so as to call for "a *combined* waterworks and electric light plant." While the waterworks and electric light plant might be run by the use of the same fuel and in part the same machinery and under the same management and thus unified, yet it is manifest that building a schoolhouse in one ward and improving one in another have more elements of unity.

In the Chillicothe case water and light were supplied. In the Memphis proposition the purpose is to furnish increased school facilities. If in the Chillicothe proposition water and light, by consumption of the same fuel under the supervision of one department and of the same agents of the city become single, so much the more does the improvement of the school facilities in an entire district, though the houses may be in separate wards, become a single proposition.

In State ex rel. Joplin v. Wilder, Auditor, 217 Mo. 261, the proposition submitted was for a "sanitary sewer" in one district and a "storm sewer" in another. The scheme involved two different systems of sewers and it was ruled a double proposition. The Joplin case may be distinguished from the case at bar, and therefore is not controlling.

In People ex rel. Mariposa County v. Counts, 89 Cal. 15, it was ruled that the proposition to issue bonds for the construction of two public wagon roads, one from Coalterville to Bear Valley and the other from Mariposa to Yosemite, was composed of parts that were germane and related and therefore not bad for doubleness—the said roads intersecting with an existing road.

In People v. Dunn, 80 Cal. 211, it was ruled that providing a permanent site for the California Home for the care and training of feeble-minded children *and* the erection of suitable buildings was a single purpose.

In Rock v. Rinehart, 88 Iowa 37, Iowa county had salable swamp lands. Marengo was the county seat. There was no court house. A proposition was submitted to the voters to erect a court house in Marengo not to exceed the sum of $50,000 *and* to pay for the same out of the sale of swamp land. It was held a single proposition. Obviously that ruling could only be sustained on the theory that the two parts of the proposition were germane and were so related as to

make a congruous whole, because there were two elements to it—one, the erecting of a court house; the other, the sale of swamp lands to pay for the same.

In Truelsen v. Duluth, 61 Minn. 48, the proposition put to the voters was to erect or purchase a water and light plant and issue bonds to pay for the same and it was held not double. In that case the election was held invalid because other incongruous and self-destructive propositions were submitted.

In Hubbard v. Woodsum, 87 Me., *supra*, it was ruled that a proposition "to erect new county buildings, including court rooms, offices for the several county officers, jury rooms, library rooms and fire proof vaults for the records of the probate office, register of deeds, clerk of the courts and county treasurer; *also* jail and jailer's house at a cost of not to exceed $30,000," on a described lot, and to hire money to build all said buildings by issuing the notes and obligations of the county, was but a single proposition and comprised but one subject.

In People ex rel. Attorney-General v. Caruthers School District, 102 Cal. 184, it was ruled that a proposition to purchase a lot *and* build a schoolhouse by issuing bonds covered but one subject.

The identical proposition was resolved in the same way in People v. Sisson, 98 Ill. 335.

In Wimberly v. County of Twiggs, 116 Ga. 50, it was ruled that a proposition to build and furnish a court house, coupled with one to build and furnish a jail, setting apart a certain sum for one and a certain sum for the other, all to be paid by one issue of bonds, comprised but a single subject and was not bad for doubleness.

In Kemp v. Town of Hazlehurst, 80 Miss. 443, it was ruled that a proposition was not double the purpose of which was to erect a waterworks and electric light plant.

We deem the cases cited persuasive authority for the conclusion announced, although cases may be found ruling the other way.

The premises considered, our order for an alternative writ of mandamus should stand and an absolute writ should issue. It is so ordered.

*Valliant, C. J.,* and *Gantt* and *Woodson, JJ.,* concur; *Burgess* and *Fox, JJ.,* concur in the result; *Graves, J.,* dissents.

## ON MOTION FOR REHEARING.

### DISSENTING OPINION.

GRAVES, J.—Being the original dissenter in this cause, and by our rules having ten days after final disposition to express my reasons for such dissent, I feel that the importance of the public question involved in the case justifies a trespass both upon time and space for an expression thereof.

It has been said that no legal question has been properly settled until it is settled right. In a sense I have followed this idea, not however to the exclusion of another, that when a question has been settled in one case by a majority of the court, dissenters should not persist in repeating their views in a subsequent case involving the same question. But in my humble judgment that proposition is not in this case. To my mind we have departed from the beaten paths heretofore marked out by this court, and launched out upon an unknown sea, and this, too, without rudder or compass. Vacillating opinions have been the bane of every court and to the end that such should not be charged to the door of this court we should not change our own holdings without saying to the bench, and the bar, and the public officials of the Sate, that we have so done.

Viewing this case as I do, it occurs to me that we have departed from the previous well considered

causes, and that, too, without saying so in plain and explicit terms. That a court has the right to change its views goes without question, and that it has a right to overrule previous holdings is equally unquestioned. Courts are not infallible any more than individuals are infallible, because, after all, courts are made up of individuals, and oftimes of individuals having varying minds.

Not only do I think we have departed from precedent in this cause, but I am impressed that a properly pleaded and urged contention made by the State and the State Auditor through the learned Attorney-General, has been entirely unconsidered by the opinion of my learned brother who wrote it, and by my learned brothers who assented thereto. This necessitates a statement of the issues, as such issues appear from the record, rather than as such issues may appear from mere conclusions.

I would not feel called upon to write, except for the fact that the opinion of the majority opens up the floodgates to fraud, and in addition compels a State officer to certify to things which a conscientious man should not be compelled to state in an official certificate. But sufficient by way of preamble. Let us now get to the facts of this case.

The School District of Memphis in Scotland county, Missouri, presented forty-five school bonds of five hundred dollars each to the State Auditor for registration under the law. These bonds were all of the same character so far as the tenor and wording thereof were concerned. The Auditor refused to register them and this action in mandamus was brought in this court to compel him so to do. The petition sets out in detail the acts of the school district and its officers up to and including its application for the registration of said bonds.

Inasmuch as my brothers in the majority have not seen fit to fully cover the allegations of the peti-

tion for mandamus and the demurrer thereto filed by the Attorney-General, I deem it proper to take from the record the actual facts therein contained.

The petition of relator is fully set out in the abstract of record furnished to this court by the learn-ed Attorney-General. Such petition charges the cor-porate capacity of relator. It then charges the 'offi-cial position of respondent and his duties as State Auditor, in so far as they relate to the registration of bonds such as are involved in this case. The peti-tion of relator then charges that on December 22, 1908, the school board made an order "in the matter of calling an election for the purpose of submitting to the qualified voters of said school district a proposition to incur indebtedness to the amount of $22,500 and to issue bonds therefor for the purpose of erecting a schoolhouse in the First Ward of said school district, furnishing the same, and to erect an addition to and im-prove the schoolhouse in the Second School Ward of said school district."

The petition of relator then charges that it appear-ed to the board of said school district that it was de-sirable to erect this new schoolhouse and to erect an addition to the other. This board likewise determined that the costs thereof would not be less than $22,500.

Afterwards the school board of said district made an order as follows:

"That a special election be held in said school district under and pursuant to the provisions of said section 9752 of 'the Revised Statutes of Missouri of 1899, on Tuesday, January 26, 1909, in the Men's Waiting Room of the basement of the Court House in the city of Memphis, Missouri, for the purpose of submitting to the qualified voters thereof a proposi-tion to incur an indebtedness for said school district in the sum of $22,500, for the purpose of using $20,000 of said amount in building a schoolhouse in the First School Ward of said school district and furnishing

the same, and $2,500 of said amount to be used in building an addition to and improving the schoolhouse in the Second School Ward of said district, and issue bonds therefor, said bonds to become payable in twenty years with privilege of payment at the end of five years and bear interest at the rate of five per cent per annum, payable semi-annually.''

The petition of relator further says that the notice given of such election was in the following form:

''Notice is hereby given to the qualified voters of the independent school district of Memphis, Missouri, that by order of the school board of said independent school district of Memphis, Missouri, made on the 22d day of December, 1908, it was ordered that a special election of the qualified voters of said school district be held in the Men's Waiting Room of the basement of the Court House in the city of Memphis, Missouri, on Tuesday the 26th day of January, 1909, for the purpose of authorizing the said board of directors to borrow money to the amount of $22,500 and issue bonds for the payment thereof, for the purpose of using $20,000 of said amount in building a new school house in the First Ward of said district, and $2,500 of said amount to be used in building an addition to and improving the schoolhouse of the Second Ward of said district. Said bonds to run twenty years, with the privilege of payment at the end of five years, and to draw five per cent semi-annual interest from the date of their issue. The qualified voters voting at said election shall vote by ballot. Those voting in favor of the loan shall have written or printed on their ticket 'For the Loan.' Those voting against the loan the words, 'Against the Loan.' ''

It is further charged in the petition of relator that upon a return of the vote the propositions heretofore submitted as specified in the order and the notice hereinabove quoted received the necessary vote for adoption. It then appears that said school district by and

through its directors entered the following order:

"Whereas, at an election duly called and held in School District of Memphis, Missouri, after notice thereof had been duly given for the time and in the manner required by law, there were authorized to be issued the school building bonds of said district to the amount of twenty-two thousand five hundred dollars; therefore, be it

"*Resolved,* That under the authority aforesaid, there are hereby directed to be issued forty-five school building bonds of five hundred dollars each of School District of Memphis, Missouri, dated May 1, 1909, and becoming due twenty years thereafter, which said bonds shall bear interest evidenced by coupons at the rate of five per cent per annum, payable semi-annually. Both principal and interest of said bonds shall be made payable at the Mercantile Trust Company in the city of St. Louis, Missouri; be it further

"Resolved, that the bonds hereby authorized shall be in substantially the following form:

"No.—— $500.
"UNITED STATES OF AMERICA
"STATE OF MISSOURI
"*SCHOOL DISTRICT OF MEMPHIS*
"School Building Bond.

"Know all men by these presents, that School District of Memphis, in the State of Missouri, acknowledges to owe and for value received hereby promises to pay to bearer five hundred dollars lawful money of the United States of America on the first day of May, 1929, with interest thereon from the date thereof at the rate of five (5) per centum per annum, payable semi-annually on presentation and surrender of the annexed interest coupons as they severally become due. Both principal and interest of this bond are hereby made payable at the office of the Mercantile Trust Company in the City of St. Louis, Missouri.

"This bond is redeemable at the option of the school board of Memphis at any time after May 1, 1914.

"This bond is one of a series of like tenor issued for the purpose of providing funds for the erection of a school building in and for said School District of Memphis under the authority of chapter 154 of the Revised Statutes of the State of Missouri, and of an election duly called and held in said district; and it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issuing of the bond have been done, happened and been performed in regular and due form as required by law; that a direct annual tax has been duly levied upon all of the taxable property in said School District of Memphis for the payment of the principal and interest of this bond at their respective maturities, and that the total debt of said district, including this bond, does not exceed the statutory or constitutional limitations.

"In testimony whereof, the board of school directors of Memphis, Missouri, has caused this bond to be signed by its president and attested by its secretary, and has caused the annexed interest coupons to be executed with the *fac simile* signatures of said officers this first day of May, 1909.

"Attest:

"W. T. REDDISH,                    G. E. LESLIE,
        "Secretary.                    President."

It should be stated here that the bond set out in relator's petition duly copied from the petition as above set out, is the bond that was presented to the Auditor for registration and none other. In other words, the entire bond issue is in the form set out in relator's petition.

Upon the filing of relator's petition in this court, which said petition was duly verified by oath, and contained the bond hereinabove set out, the Attorney-General when called upon to plead thereto for and in behalf

of the respondent, the State Auditor, filed the following demurrer:

"Now comes the respondent, John P. Gordon, State Auditor of the State of Missouri, and waiving the issue of an alternative writ in the above entitled cause, demurs to the petition of the relator herein and assigns the following as his grounds of demurrer, to-wit:

"First: Said petition fails to state facts sufficient to constitute a cause of action.

"Second: Because the petition upon its face discloses that two separate and distinct propositions were submitted and voted upon jointly.

"Third: Said petition and the matters and things therein as stated and set forth are not sufficient in law nor in equity to entitle the relator to the relief asked for in said petition nor to authorize the issuing of the writ of mandamus therein prayed for.

"Respondent further says that by reason of the demurrer hereinabove set forth he should be dismissed with his reasonable costs."

The case came on to hearing upon the petition of relator fairly abstracted as aforesaid, and the demurrer as aforesaid. Questions of law will be noted during the course of the opinion.

I. The foundation of the majority opinion is to the effect that we must determine whether or not a proposition as submitted to voters is double by the same rule that we determine a doubleness of a proposition in a title to a bill before the Legislature under article 4, section 28, of the Constitution. This rule of construction we do not concede, nor do the cases in this State proceed upon any such theory, except the present opinion in which we transplant the ideas of the Supreme Court of Maine to Missouri.

In a way the two questions may be akin in that

the prevention of fraud is a purpose to be attained in each. But the difference lies in the fact that in determining doubleness in Legislative acts, the courts do it under Constitutional edict, whilst such is not true in determining doubleness of a proposition to be voted upon by the people. For a proper conception of the difference we must consider the duties of a court under the Constitution, and the duties of a court in the course of administering justice according to a proper understanding of the law. The people made the Constitution and when in their sovereign power they have said that a thing must be done in a certain manner it does not lie within the power of the courts, or any other creature of the Constitution, to gainsay such expressed will. Not so, however, where the court is dealing with a question not specifically provided for by the fundamental law, to-wit, the Constitution.

The sovereign power which prescribes the things which might be and might not be done, likewise created the courts and other departments of government. If the voice of the constitution-making power, i. e., the people, said that under certain circumstances, specific things must be done, it is not for the courts, the creatures of the same Constitution to gainsay such constitutional mandate. If the Constitution (the express voice of the people) says an instrument must be framed in certain language, it is not for the courts, the mere creatures of the Constitution to say that it shall not be done. For these reasons we have held, and rightfully held, that indictments must conform to what the sovereign power of the State has said must be done. [State v. Warner, 220 Mo. 23; State v. Campbell, 210 Mo. 202; State v. Skillman, 209 Mo. 408.]

In other words, the people who make and unmake constitutions have spoken. In so speaking they not only prescribe a certain course of conduct but likewise create the courts and give to them the only powers which they possess. It is not the province of

the creature to tear down and rebuild the structure of the creator. What the creator said as to how certain things could and should be done, if clearly expressed, is not a matter for the courts, the mere creatures of the same power. Of course, if the language is dubious and doubtful the courts can consider it and interpret it, but not otherwise.

So that we say that the basis of the construction fixed by the majority opinion is improper in that there is no analogy between things which must be done under constitutional mandates and things which may be done under the judgment of the courts in the administration of justice. Mandates of a constitution may and often do appear to be unreasonable, yet if couched in plain language, and in no way dubious or uncertain, the courts, the creatures of the same instrument, must bow in humble submission to the constitutional mandate.

We know that in some instances modern practices have been to hold as naught constitutional provisions and for courts and other governmental agencies to write anew these venerable instruments. To this modern doctrine we have never adhered, and as long as constitutional government is to be ours, will never lend our assent.

But to the rule of construction adopted by the majority opinion in this case, let us now revert. Constitutional mandates, whether reasonable or unreasonable, must be followed by the courts, because the courts (the stream) can never rise higher than the source.

There may be one or two expressions from the courts, now seized upon by the majority opinion, to place the construction of what is a double proposition upon the basis of a constitutional mandate concerning double propositions, but these cases are so few and far between that serious discussion of them can well be omitted.

Doubleness of propositions in questions to be voted upon by the people did not have its origin in constitutional mandates, and with one or two exceptions up to the present case, has never been reckoned along that line. Be it further said that such exceptions do not come from Missouri. It is true that we have studiously avoided in this State entrenchment upon the Constitution, and we have likewise through our courts as studiously undertaken to prevent and avoid frauds in all kinds of elections. We have denounced double propositions which were calculated to secure votes which could not otherwise be secured. We have done this in Missouri prior to the present opinion, on the theory that the courts would and could suppress frauds, and could and would see that there was a fair expression upon each and every question relating to taxation, but not on the theory that there was any special analogy between the performance of this duty and certain constitutional mandates. The difference lies in this, that constitutional mandates must be obeyed whether reasonable or unreasonable, but the fact as to whether or not the courts should permit a double proposition, which upon its face indicates that there was a purpose to obtain votes for the proposition which could not otherwise be obtained, rests upon an entirely different theory. The latter question rests upon the sound discretion of the courts in the administration of justice to prevent a fraudulent exercise of the taxing power of the State, a power closely scrutinized by the courts.

So to our mind the discussion of what can and cannot be placed in the title clause of a bill pending before a Legislature has no special significance here. Not only so, but the construction given to said titles are and would be repugnant to what a court would say as to the exercise of the taxing power of the State. The title to a bill is only expected to be a fair index to the context of the bill. On the other hand, proposi-

tions relative to the taxing power of the State and
propositions to be voted upon by the plain people
must be plainly stated and in single and substantial
form. Not only so, but they must be so stated as to
avoid what has been denominated by the courts as
logrolling in the interest of a combined proposition
which would not occur in the interest of a single
proposition. The courts in the administration of
justice, and without any reference to constitutional
mandates, have discovered that doubleness of proposi-
tions to be voted upon by the public was inducive of
fraud and that it was uncertain whether either of two
or more propositions could have been carried by vote
had they been submitted singly. To obviate this fraud
upon the taxing power of the State this court up to
the present time, and excepting the present case, has
consistently turned its face against doubleness of
propositions and the frauds which are the necessary
outgrowth thereof.

However, before going to the holding of the courts
of this State it might be well to submit the general
proposition of law resulting from the examination of
all cases bearing upon the question. In 21 American
and English Encyclopedia of Law (2 Ed.), 47, it is
said: "Two propositions cannot be united in the sub-
mission so as to have one expression of the vote
answer both propositions, as voters might be thereby
induced to vote for both propositions who would not
have done so if the questions had been submitted
singly."

This announcement of the general doctrine is not
only in full accord with the cases in Missouri, but
with all of the jurisdictions to which our attention has
been called. And if we be called upon to assign a
reason for this salutary rule, that reason would be,
that the taxing power of the State should be exercised
with the utmost openness and fairness and without op-
portunity for "jockeying" and "logrolling." In other

words, the courts of the country generally, in matters which go to the exercise of the taxing power of the State, have been exceedingly cautious to see that such power was exercised by a fair expression at the election held for such purpose. The question is not whether a constitutional mandate has been followed but whether the proposition submitted is one which tended within itself and upon its face to induce "jockeying" and "logrolling" in order to carry a combined proposition. That such things may be done is apparent to all thinking minds. To the average court it would appear that if there were five wards in a school district and one of such five was extremely anxious to have voted a large sum for buildings in that ward it would be easy to have a proposition submitted to make nominal improvements in the other four wards in order, by "jockeying" and "logrolling" to secure the necessary votes. Against this proposition the courts of this State, and in my judgment in most other States, have turned a deaf ear. Yet that is the proposition that confronts us in the present case.

As expressive of the latest views on this proposition, this court, in the case of State ex rel. v. Wilder, 217 Mo. 261, said:

"But there is another reason why a peremptory writ should not be awarded in this case, and that is that the proposition submitted to the voters embraced two separate and distinct propositions; one for the construction of a public sanitary sewer in District No. 7, in West Joplin, and another for the construction of a storm sewer in Willow Branch District, in said city. In the way this was submitted to the voters, they had no alternative than to vote, if they voted at all, for or against both propositions. They could not vote for one and against the other, however much they might have desired to do so.

"In State ex rel. v. Allen, 186 Mo. 673, the propo-

sition voted upon at the election was 'for said city to become indebted in the sum of twelve thousand dollars in excess of its annual revenue, for the following purposes, to-wit: Forty-five hundred dollars to be used for the purpose of purchasing a site and the erection and construction of a public building thereon or the purchase of a site and building to be used for a city hall, city prison and hose house and for furnishing the same, and the further sum of seventy-five hundred dollars to be used in making repairs and improvements in waterworks and electric light plant and extension of water mains and electric lines belonging to said city.' This was all submitted as a single proposition. It was held that this submission contained at least two separate and distinct propositions, one for an increase of municipal indebtedness to a certain amount for one purpose, and another for an increase of municipal indebtedness for another and different purpose, and 'that two propositions cannot be united in the submission so as to have one expression of the vote answer both propositions, as voters thereby might be induced to vote for both propositions who would not have done so if the questions had been submitted singly (21 Am. and Eng. Ency. Law [2 Ed.], 47), a principle recognized by this court in the recent case of State ex rel. v. Allen, 178 Mo. 555.'

"The voters should have been given the opportunity to vote for and against each object. As submitted, the voters could vote for or against both, but not for one and against the other. The property-owners in District No. 7 were not, it is clear, interested in the proposed storm sewer in Willow Branch District, for said two districts are not contiguous, nor do they lie in the same part of the city, nor in the same natural drainage area; and the proposed sanitary sewer in District No. 7 would not in any manner connect with or have any relation to said storm sewer; nor would the citizens of Willow Branch District have

any interest in the proposed sanitary sewer for District No. 7; nor would the people of the city of Joplin, outside of said proposed sewer districts, be served or benefited by either of them.''

And in the case of State ex rel. v. Allen, 186 Mo. l. c. 675, cited *supra,* written by our Chief Justice BRACE, the following was said:

''That this submission contained at least two separate and distinct propositions, one for an increase of municipal indebtedness to a certain amount for one purpose, and another for an increase of municipal indebtedness to another and different amount for another and different purpose, is beyond question. And it being manifest that such a submission was in the teeth of the well-recognized principle of law, 'That two propositions cannot be united in the submission so as to have one expression of the vote answer both propositions, as voters thereby might be induced to vote for both propositions, who would not have done so if the questions had been submitted singly' (21 Am. and Eng. Ency. Law [2 Ed.], 47), a principle recognized by this court in the recent case of State ex rel. v. Allen, 178 Mo. 555, the motion to quash the alternative writ was unanimously sustained, orally, by the Court in Banc, on the submission of the case on the twenty-fourth of December, 1904. By which, it was in effect held that the bonds issued in pursuance of such election were invalid, and the Auditor under no obligation to register them. This opinion is written simply to make that ruling more explicit.''

Of course it does appear in the opinion last quoted that the writer of the majority opinion in this case did not sit, possibly for the reason that he was not present at the time of the argument, although that reason does not appear. This, however, like the case in the 217 Mo., above cited, were opinions by this

Court in Banc. Not only so, but the opinion in each case was unanimous, with the exception aforesaid.

It will be noted that Chief Justice BRACE quoted with approval 21 Am. and Eng. Ency. Law (2 Ed.), p. 47, and in our humble judgment in so doing he gathered to his case the summarized views of the vast majority of the courts.

From the cases above mentioned and from all other Missouri cases it will be observed that we have adhered to the doctrine that doubleness of a proposition to be submitted to the voters has been condemned on the theory that the voter has not had the privilege of casting a separate and distinct vote upon each proposition, and not on the theory that any constitutional mandate as to the title of a bill has been violated.

To hold that doubleness should be determined by the construction which the courts place on constitutional mandates can easily be shown to be erroneous. In the first place courts generally hold under such constitutional mandates that if the title is a fair index to the bill, and the questioned subject-matter is germane to the subject expressly provided for in the title, then the title meets the constitutional mandate. Yet, whilst this is true and our courts have so held, who for a moment would say that where the taxing power of the State was to be called into question, the proposition, the purpose of which was to carry the tax, should not be specifically and plainly stated? In other words, in cases of that character the question as to whether or not the subject-matter is germane to the proposition is not a matter of consideration. There can be no such a thing as a germane matter to the proposition to be voted upon in the exercise of the taxing power of the State, however true this may be as to the doubleness of propositions in legislative matters. It occurs to us, therefore, that the very foundation of all the reasoning expressed by the majority opinion

absolutely falls with a consideration of the difference between propositions which involve the taxing power of the State and propositions relative to what may not be germane subject-matters in the title to a bill.

At most be it said that up to this opinion nowhere in the annals of the State has such a comparison been made. The rule of construction is wrong. What might be doubleness of propositions in the title to a bill is determined by many considerations which could not be applied to what is meant by doubleness of propositions as applied to questions involving the taxing power. The two questions are akin only to the end that they both tend to suppress fraud. If we were to apply the rule "germane to the subject," as we do in construing the constitutionality of laws, to the propositions submitted in exercising the taxing powers of the State, where would be the end?

In our judgment the Missouri cases cited above, together with several others, should be overruled in the present majority opinion, if it be correct, so as to no longer be stumbling blocks to public officials in the discharge of their duties.

II. Not only does the Supreme Court of Missouri place this doubleness of proposition on the basis of violating the right of a full and fair public expression upon matters pertaining to taxation, but other courts have been equally expressive.

In Leavenworth v. Wilson, 69 Kansas l.'c. 78, that court says: "The subject of purchasing a particular waterworks plant already in existence is utterly diverse from that of building a new one. It needs neither argument nor illustration to make this plain truth apparent to any mind of ordinary capacity. The judgment of the mayor and council upon one of these subjects might well be approved by the people through a majority vote in favor of bonds, although the judgment of the same officials upon the other subject would

be overwhelmingly repudiated at a bond election. The ballot required to be used at the election in question obliged the voter to approve bonds for both purposes or to reject bonds for both purposes. If he favored one plan and disapproved the other he was allowed no opportunity to indicate his view. Because of the dual ballot persons adverse to purchase may have voted with persons adverse to building for bonds which, thus supported, carried, although both propositions would have failed ignominiously had they been separately submitted; therefore, the election was not a fair one to the people of the city of Leavenworth.''

Likewise, in the case of Gas and Water Co. v. City of Elyria, 57 Ohio St. 374, the court among other things, said: ''And it is the policy of the statute that the proposition for each separate improvement shall stand on its own merits, unaided by combination with any other measure, and be so acted upon by the council in the first instance, and then, if adopted, be so submitted for approval by the electors that each may be voted upon as a separate measure, uninfluenced by combination with others. The reason is, that the requisite majority of the council, and of the electors, may be in favor of one measure, and against the other, or against each; while by uniting them as one, and submitting them to be acted upon in that form, the members of the council, and the electors, are required to vote for or against both propositions combined, or abstain from voting at all, and thus denied the right to express their will with respect to each.''

In Truelsen v. City of Duluth, 61 Minn. 48, it was said: ''If the city council desired to place a proposition to erect a water and light plant or plants fairly and reasonably before the voters, as against a proposition to purchase the existing plant, the propositions should have been submitted so as to allow a free and full expression on the real merits of each.''

State ex rel. v. Gordon.

A very similarly worded proposition comes from the State of Washington. We say similarly worded because, in this proposition, the first statement made is in reference to a proposition to borrow $25,000, which was followed by a subdivision of the $25,000 into particular parts as in the case at bar. That court, speaking of such proposition, said: "By ordinance 178, the city council ordered the submission of a proposition to borrow $25,000 upon time bonds, under the act of March 7, 1891 (Acts, p. 261). The purposes for which this money was to be borrowed were set forth in the ordinance as—(1) To pay outstanding indebtedness, $20,000; (2) for the purchase of fire apparatus, $1,500; (3) for the purchase of a lot of land, and the erection of a city hall and jail thereon, $3,500. But one ballot was used, 'Bonds, yes,' and 'Bonds, no;' and appellant contends that this was irregular, inasmuch as there were two propositions involved, viz., a proposition to fund $20,000 of old debts, and a proposition to borrow $5,000 for future purposes. We agree with him in this, notwithstanding the argument of the respondent that the statute is broad in its permission to borrow money for municipal purposes, and that the acquisition of money to pay debts is a strictly municipal purpose." [McBryde v. Montesano, 7 Wash. l. c. 72. See, also, 20 Am. and Eng. Ency. Law (2 Ed.), 1111; 21 id. 47.]

In Lewis v. Commissioners of Bourbon County, 12 Kansas 186, even stronger language than we have used was employed by the court to express its disapproval of doubleness of propositions under the taxing power. "It may be conceded that two or more questions may be submitted at a single election, provided each question may be voted on separately, so that each may stand or fall upon its own merits. But that is a very different matter from tacking two questions together, to stand or fall upon a single vote. It

needs no argument to show the rank injustice of such a mode of submission. By it several interests may be combined, and the real will of the people over-slaughed. By this combination an unpopular measure may be tacked on to one that is popular, and carried through on the strength of the latter. A necessary matter may be made to carry with it some private speculation for the benefit of a few. Things odious and wrong in themselves may receive the popular approval, because linked with propositions whose immediate consummation is deemed essential. It is against the very spirit of popular elections.''

In the case of Keane v. Fort Scott, 14 Fed. Cas. l. c. 162, the proposition under which bonds were issued thus reads: ''$75,000 to the capital stock of the M., K. & T. R. R. and $25,000 for the purpose of procuring the right of way for the road of said company through the corporate limits of the city, and the purchase of grounds for depot and machine shops to be donated to the company.'' The city attempted to defend in the suit upon the bonds in the hands of a bona-fide purchaser. In discussing this contention, Judge DILLON uses this language: ''The objection to the submission would probably have been well taken in a suit to prevent the issue of the bonds, but it comes too late now.''

III. By petition in this case, relator has pleaded and fully set out the different steps taken. Relator has further furnished in said pleadings a copy of the bond, and copy of the questions voted upon and all other things necessary to show the exact proceedings had by the school district. From that petition it will be noticed from our statement that the school board directed that there be submitted to the qualified voters a proposition to incur indebtedness and issue bonds therefor in the sum of $22,500, this sum to be used for a schoolhouse in the first ward and furnishing the

same and to erect an addition to and improve the schoolhouse in the second ward.

It will further be noticed from the record, which we have purposely set out at length, that the notice which was caused to be published, said nothing about furnishing the new schoolhouse in the first ward and in that manner departs from the order of the school board.

Lastly, when we go to the order for the issuance of the bonds and the bonds themselves, we find that the order shows nothing as to dividing the funds for two separate purposes but the bonds themselves say on their face: "This bond is one of a series of like tenor issued for the purpose of providing funds for the erection of *a school building* in and for said school district of Memphis."

It will be observed that whilst the proceedings show that two schoolhouses were to be built yet they issue forty-five bonds of $500 each, being the full amount of $22,500 and recite that these bonds are to build "a school building," but do not recite that they are for the double purpose of building one new building and remodeling or rebuilding an old one.

Under section 5167, Revised Statutes 1899, the Auditor of State is required when bonds are presented to him to make a certificate to this effect: "And who shall certify by endorsement on such bond that all the conditions of the law have been complied with in its issue, if that be the case, and also that the conditions of the contract under which they were ordered to be issued have also been complied with, and the evidence of that fact shall be filed and preserved by the Auditor."

Notwithstanding this provision of the statute, this court by its majority opinion has sought to compel the Auditor to certify that he had evidence on file in his office showing that by proper and legal proceedings these bonds, forty-five in number and of the value of

$500 each, had been duly authorized for "a school building."

It was the duty of the relator by his petition to aver facts to show that he was entitled to the relief sought. That relief is prescribed by section 5167. When relator set out all the proceedings, as was done in this case, and the respondent by the first terms of his demurrer, set out in full in our statement, challenges the sufficiency of that petition in every respect, then it becomes the duty of this court in passing upon this demurrer to see that all proceedings to entitle the registration of the bonds fully appear.

Nor will it do to say that this question was not pressed upon the court. The first brief filed by the learned Attorney-General suggested to this court that the recitation of the bonds was at variance with the proceedings in the case and in the motion for rehearing it is most strenuously urged, and in my humble judgment we have handed down an opinion which directs the registration of any bond which may hereafter be tendered.

Throughout the entire school proceedings part of these bonds were to be for one schoolhouse and part for another and yet we say, by the opinion of our brothers in the majority, that the State official, charged with scrutinizing the proceedings, shall register a bond which recites upon its face that it is one of the number which covers the entire appropriation and is for "a school building," and not for two buildings.

We have lengthened this dissenting opinion in the way of elucidating facts, more perhaps than ought to have been done. We thought it due, at least to the public and to public officials, that a full statement of the proceedings which authorized the registration of these bonds should appear.

We are clearly of the opinion, for at least two reasons, that these bonds should not have been registered. First, because of the doubleness of the propo-

sition, and second, because the bonds tendered for registration are not in conformity, by way of their recitations, with the other proceedings had by the school district.

*Burgess* and *Fox, JJ.,* concur in these views, and are of opinion that the motion for rehearing should have been sustained.