ISABEL LINN, APPELLANT, V. CITY OF OMAHA ET AL., APPELLEES.

FILED MAY 3, 1906.   No. 14,616.

1. **Municipal Bonds:** SPECIAL ELECTIONS. Under its charter the city council of Omaha may provide by ordinance a manner, not inconsistent with statutory provisions, for calling and conducting a special election for the purpose of voting upon a proposition to issue such bonds of the city as are authorized by law.

2. ———: PUBLIC BUILDINGS. The power to issue bonds for the construction or purchase of needful buildings for the use of the city, conferred by section 195 of the Omaha charter, gives that city power to issue its bonds for the purpose of raising funds with which to procure a site for any such building, the construction of which is also provided for in the same manner and as a part of the same proposition.

3. **Special Election:** ENGINE HOUSES. At a special election there was submitted to the electors this question: "Shall the bonds of the

city in the sum of $60,000 be issued for the purpose of paying the cost of constructing fire-engine houses * * * such * * * to be in the locality and at the estimated and approximate' cost as follows: North 50 feet of lot 13, block 1, Armstrong's First Addition, estimated cost $30,000. For the purchase of site and the erection of a fire-engine house thereon in the district lying north of Willis avenue * * * estimated cost $30,000." *Held*, To contain but one proposition—to procure engine houses.

4. ———: VOTING MACHINES. An inscription on the ballot label of a voting machine used in elections upon questions may be abbreviated to meet the requirements of the limited space. The inscription, "Shall the city issue $60,000 fire-engine house bonds to run 20 years at 4%?" upon the ballot label of the voting machines used at the election in controversy, as an abbreviation of the proposition quoted in the last paragraph, is a sufficient statement of the question submitted.

5. A city election will not be annulled by the courts because the city council delegated to persons not members thereof the ministerial duty of assisting the city clerk in tabulating the election returns, in the absence of fraud or mistake.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*A. G. Ellick,* for appellant.

*John P. Breen* and *W. H. Herdman, contra.*

EPPERSON, C.

This is an action for injunction instituted by the plaintiff, who is a resident and taxpayer of the city of Omaha, to annul ordinance No. 5,613 of said city providing for a special bond election, and to declare void an election held in pursuance thereto, and to restrain the defendants as officers of the city of Omaha from executing or negotiating certain bonds of that city. A demurrer was filed to the petition and sustained by the trial court. Plaintiff, not desiring to plead further, a judgment of dismissal was entered, from which the plaintiff appealed.

The facts alleged in the petition, and necessary for our consideration, are as follows: On September 27, 1905, the

city council of Omaha passed an ordinance providing for submitting to the electors of said city at a special election the following proposition: "Shall the bonds of the city of Omaha in the sum of $60,000 be issued for the purpose of paying the cost of constructing fire-engine houses for the use of the fire department of the city of Omaha, such fire-engine houses to be in the locality and at the estimated and approximate cost as follows: North 50 feet of lot 13, block 1, Armstrong's first addition, estimated cost $30,000. For the purchase of a site and the erection of a fire-engine house thereon in the district lying north of Willis avenue, west of the east line of Sherman avenue and east of the west line of Twenty-fourth street, estimated cost $30,000." Said ordinance authorized and directed the mayor to issue his proclamation calling said special city election, and directed that said proclamation be issued at least 20 days prior to said election, and provided that, if voting machines be used at said election, the city clerk should prepare the statement of the question submitted to be inserted on the ballot label. The mayor issued his proclamation, and the proposition for such election was published as required by law. On November 7, 1905, said special election was held, at which voting machines were used instead of ballots. Upon the ballot label there was set forth the following words and figures: "Shall the city issue $60,000 fire-engine house bonds to run 20 years at 4%?" On the Thursday evening following, the city council met for the purpose of canvassing votes cast at the said election, and at the meeting the president appointed two persons to assist the city clerk in canvassing the returns. These two persons took an oath of office before the city clerk to faithfully and impartially perform their duties as canvassers, and thereupon they and the city clerk proceeded to canvass the vote. At the session of the city council on the following day, the clerk and the persons thus appointed to assist him made a report in writing to the city council that they had tabulated the vote, and found that upon said proposition there were 3,416 votes "Yes," and 1,468 "No." Upon receiving such

report, the president of the city council declared the proposition voted upon, stating the same at length, duly carried. Upon motion, and the vote of the city council, the declaration of the president was approved. On November 21, 1905, the city council duly passed an ordinance authorizing and directing the issuance of said bonds. Thereafter the bonds were offered for sale by the city of Omaha, and were sold to J. L. Brandeis & Son, and at the time this suit was instituted the defendants were preparing to execute, issue and deliver said bonds to the purchaser.

1. The plaintiff contends that the city of Omaha under its present charter has no power to submit such a question to the electors at a special election. Subdivision 28, section 144 of the city charter (Comp. St. ch. 12a, 1905), authorizes and empowers the city to establish fire-engine houses. Subdivision 29 of said section provides that the city may establish any useful or necessary building upon any land purchased for such purpose. Section 195 of the charter provides as follows: "The mayor and council are hereby authorized and empowered to issue bonds of the city with interest coupons annexed in such amounts and for such length of time as they may deem proper  *  *  *  for the construction or purchase of a city hall, auditorium, or other needful buildings for the use of the city." Section 197 provides: "No bonds  *  *  *  shall be issued until the electors of said city shall have authorized the same by a two-thirds vote of the electors of such city, voting on said proposition, at a general or special election of said city held after ten days' notice, published in the official paper of the city stating the maximum amount proposed to be issued and stating distinctly the purpose for which they are to be issued." Reading the several sections above cited together, it clearly appears that the city has the authority to construct or purchase useful buildings, and under the petition in this case we are required to assume that the proposed engine houses are necessary and useful. It also appears that the city officers have the power to issue bonds to raise funds for such purpose. We find no provision in the

charter providing the manner for calling the special elections authorized by section 197; but as the power was expressly conferred by the legislature, which failed to establish the manner of its exercise, the city was required to prescribe by ordinance the manner of exercising these powers. Such was done in this case by the passage of ordinance No. 5,613 set forth in the petition. Authority therefor is given by section 143 of the charter which provides: "When by this act the power is conferred upon the mayor and council to do and perform any act or thing, and the manner of exercising such power is not specially pointed out, the mayor and council may provide by ordinance the details necessary for the full exercise of such power."

2. Plaintiff contends, further, that the city of Omaha has no power to issue bonds for the purpose of purchasing a site for an engine house; and cites in support thereof *Witter v. Board of Supervisors*, 112 Ia. 380, 391, 83 N. W. 1,041, in which the supreme court of Iowa held that under the statute of that state, authorizing counties to borrow money for the erection of public buildings, and to issue bonds for such indebtedness, a county has no express or implied power to issue negotiable bonds for a debt created in the purchase of necessary real estate for a courthouse site. This case, it occurs to us, is not in point. In the opinion the court say in reference to the statutes they had under consideration:

"It is contended by the county, however, that express power so to do is conferred by sections 447 and 448 of the code, and that the power to issue bonds for the erection of a public building was also intended to include the ground upon which it is situated. A careful examination of the statute covering the entire subject leads us to a different conclusion."

A like examination of our own statutes leads us to the conclusion that a city of the metropolitan class in this state has the authority to issue bonds for the purchase of land as a site for an engine house. The statute construed

by the Iowa court, it seems, contained no provision for the purchase of the desired public building. Section 195 above quoted, it will be observed, confers upon the city officers power to issue bonds for the construction or purchase of a city hall or other needful buildings, and it seems to us that there can be no doubt but that under this provision the city would have authority to issue bonds for the purchase of an engine house, and that such purchase would include the lot or tract of land upon which the engine house had been constructed. As above shown, the city had authority to issue bonds for the construction of an engine house, and the question presents itself as to whether or not the provision of the charter is broad enough to include the purchase of the site for the proposed building. Evidently the legislature intended to provide for the procuring of all needful buildings by the issuance of bonds. We think that the intention was sufficiently expressed by the language used, and that the clause providing for the purchase of needful buildings is sufficient to authorize the purchase of a site therefor.

3. The plaintiff further contends that the question submitted at the special election contained more than one proposition, and therefore is in violation of section 194 of the charter which provides that each proposition must contain but one subject or purpose. It is argued that the construction of the engine house located at Twenty-fourth and Cuming streets is one subject; that the engine house to be located north of Willis avenue another; and that the proposed purchase of the tract of land was a third. If more than one proposition was in fact submitted the petition stated a cause of action, and the injunction should have been allowed. Many cases are cited by counsel wherein the courts of some of our sister states have disapproved similar propositions submitted in the alternative; such as: "Shall the following be adopted: To issue bonds of the city of Leavenworth in the sum of $400,000 to purchase, procure, provide or contract for the construction of water-works?" *City of Leavenworth v. Wilson,* 69 Kan. 74.

It was held that the proposition was dual and the election void. And to the same effect were the decisions in *Elyria Gas & Water Co. v. City of Elyria,* 57 Ohio St. 374, and *Farmers Loan & Trust Co. v. City of Sioux Falls,* 131 Fed. 890. In *Kemp v. Hazlehurst,* 80 Miss. 443, a proposition to provide "for the issuance of bonds for the erection of electric lights and water-works" was held not invalid because double in its nature. In *People v. Counts,* 89 Cal. 15, the court held that a proposition to vote bonds for the construction of two separate wagon roads was not dual. A vote of the necessary majority on the question to "purchase or construct" would leave the matter undetermined and with no choice indicated by the electors. But, under an affirmative vote on the proposition to buy a lot and construct thereon a building, the electors have definitely made a choice and conferred upon the city authorities a fixed duty, in the exercise of which they have no choice. The proposition in the case at bar was not dual, neither was it stated in the alternative. It was but a single proposition definitely fixed by the ordinance and by the mayor's proclamation. It is true that the proposition contemplated the construction of two engine houses and the purchase of a site for one, but such were but detailed statements of the general proposition—to procure engine houses.

4. It is next argued that the proposition submitted to the electors was not distinctly stated upon the ballot label of the voting machines. We were not favored with an oral argument of this case, but from plaintiff's brief it appears that the basis of this contention is that more than one proposition was in fact submitted, while only one appears in the inscription of the ballot label. But as above shown the proposition was single in its nature, and for the reasons above stated the city council had the authority to submit to the voters the proposition in its entirety. The ballot label necessarily contained an abbreviated statement of this proposition. Section 125x, ch. 26, Comp. St. 1905, provides: "On the ballot label for questions, the

statement of the questions submitted may be abbreviated to meet the requirements of the limited space, with the words 'Yes' and 'No' for the voter to indicate his affirmative or negative vote on any such question by operating the proper device therefor." The inscription on the ballot label was not intended to furnish information to the voter in detail as to the object of the election. The proclamation was notice of the election and fully informed the electors of the object of the election. The object of the inscription was to instruct the voter as to how he might intelligently vote on the question of which the proclamation gave him notice. For this purpose the inscription was sufficient and within the provisions of the law.

5. Plaintiff finally contends that the issuance of the bonds in controversy would be illegal because the city council delegated the power of canvassing the election returns to the city clerk and two assistants. The persons appointed made a report to the city council as to the number of votes cast for and against the proposition. It does not appear that they were called upon to exercise any quasi-judicial functions, or perform other than ministerial duties. It is, we believe, without an exception, the general rule that officers may delegate to competent persons, not officers, duties such as are clerical or ministerial in their nature, unless prohibited by statute. In this case the city clerk with the assistance of the persons delegated ascertained the result of the election from abstracts returned by the several election boards and reported the result, which was announced by the president of the council. No fraud is alleged; and such irregularity is not sufficient to avoid the election.

From these facts, fully disclosed in the plaintiff's petition, we are satisfied that said petition states no legal reason why the plaintiff is entitled to the restraining order and other relief prayed for, and we therefore recommend that the judgment of the district court be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.