[No. 9620. *En Banc.* July 29, 1911.]

E. F. BLAINE *et al., Appellants,* v. M. L. HAMILTON *et al., Respondents.*[1]

COUNTIES—INDEBTEDNESS—BONDS—SUBMISSION TO VOTERS—VALIDITY—DISTINCT OR CONNECTED PROPOSITIONS. An election to authorize a bond issue may be submitted to the voters of a county as a single proposition, requiring one affirmative or negative vote, although it is proposed to raise four specified sums for distinct parts of the project—(1) the excavation of a canal from waters to the north of a harbor, (2) the deepening of a river to the south of the harbor, (3) the diversion of the waters of another tributary river, and (4) the erection of wharves and docks in aid or furtherance of the improvement—where it appears that all four parts are related, and in fact one general project for the creation of a great harbor and the utilization and uniting of the waters' in and about it.

SAME—SUBMISSION—RESOLUTION. A resolution for the submission of a county bond issue is not illegal as combining several purposes in the conjunctive and disjunctive, from the fact that it recites that the money is to be expended for the specified purposes and other rights and interests necessary to the improvement or of securing the drainage or public interests to be derived therefrom, where the other matters referred to were but details in carrying out the enterprise.

[1]Reported in 116 Pac. 1076.

SAME—VALIDATING ACT. A bond issue in a specified sum for deepening the channel of a river "along the lines" laid out by Commercial Waterway District No. 1, and in a specified sum for diverting the waters of a river "along lines" adopted by Commercial Waterway District No. 2, is not invalid as being in aid of such districts, and beyond the authority of Laws 1911, p. 3, which declared such purposes to be county purposes, and validated bonds theretofore authorized within one year next prior to the taking effect of the act, and where the bonds would be authorized if the act be given only such force as it would have had if it had been a law when the bonding question was submitted.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered May 3, 1911, in favor of the defendants, after a trial on the merits before the court without a jury, in an action to enjoin a county from issuing bonds. Affirmed.

*P. C. Sullivan* and *Peters & Powell,* for appellants.

*John F. Murphy, Robert H. Evans, Harold Preston, Walter S. Fulton,* and *Shorett, McLaren & Shorett,* for respondents.

Gose, J.—This is an action to enjoin King county and its officers from issuing its negotiable bonds for $1,750,000, as authorized by the qualified voters of the county at an election held for that purpose on November 8, 1910. From a judgment for the defendants, the plaintiffs have appealed.

The bonds were authorized in pursuance of a resolution of the board of commissioners of King county, submitting to the qualified voters of the county the question of issuing its bonds in the amount stated, the proceeds thereof to be expended for the following purposes and in the following amounts:

"(1)　$750,000 for the excavation of a channel for the United States Government canal connecting the waters of Salmon Bay with the waters of Lake Washington, known as the Lake Washington Canal.

"(2)　$600,000 for acquiring rights of way for, and in dredging along the same, a straightened, widened and

deepened channel for the Duwamish river along the lines
laid out by Commercial Waterway District No. 1 . . .

"(3)  $50,000 for the purpose of diverting the waters of
Cedar River into Lake Washington along lines adopted by
Commercial Waterway District No. 2 about to be formed.

"(4)  $350,000 'in acquisition for public uses of sites for
wharves and docks and of other rights and interest necessary
to be acquired in aid or furtherance of said improvement or
of securing the drainage or commercial public facilities and
benefits to be derived therefrom.' "

The resolution was incorporated in the notice of election,
and recites, that it is essential to the future growth, develop-
ment, and prosperity of the county that its one harbor be
made into a great and cheap harbor, to the end that it may
retain and develop its natural commercial advantages; that
the former policy of improving the harbor in parts had not
proven advantageous; that the present harbor facilities are
inadequate; that the expansion of the harbor can be best
accomplished by means of a canal connecting Lakes Union
and Washington with the bay, straightening, widening, and
deepening the channel of the Duwamish river, and turning
the waters of Cedar river into Lake Washington; and that
the three matters are so naturally and necessarily related that
they are, in fact, a single project consisting of interde-
pendent parts.   The resolution further recites that the
acquisition of sites for public wharves and docks is essential
to the improvement as an entirety.  The question was sub-
mitted to the people as a single proposition calling for a
vote, "King County Harbor Bond Issue—Yes," and "King
County Harbor Bond Issue—No."

The appellants' first and principal contention is that sev-
eral separate, distinct, and independent enterprises were sub-
mitted to the people as a unit, compelling them to approve or
reject the bond issue as an entirety, and that the election is
therefore invalid.  The argument is that such a submission
permits a meritorious and popular measure to carry or to
be borne down by an undesirable one, and that the people

were not given an opportunity to exercise a full, free, and intelligent assent as the general law contemplates and requires. They further assert that the principle declared in the recent case of *Blaine v. Seattle*, 62 Wash. 445, 114 Pac. 164, requires a reversal of the judgment. This position makes a statement of the salient physical facts essential to a correct understanding of this case. The major portion of the city of Seattle, containing four-fifths of the population of King county, lies upon a strip of land a few miles in width, bounded on the west by Elliott bay, on the north by Salmon bay and Lake Union, on the east by Lake Washington, and on the south by the Duwamish river. The Duwamish river is formed by the union of the White, Black, Cedar, and Green rivers, all of which, except Black river, which flows out of Lake Washington, have their source in the Cascade mountains. The Duwamish river empties into Elliott bay to the south of Seattle. The purpose of diverting the waters of Cedar river into the lake is to prevent the deposit of silt in the Duwamish river when Cedar river is at its flood, to drain the Duwamish valley, aid the sanitation of the lakes and their shores, and to aid in the operation of the locks. The rounded project, when completed, will practically belt the city with navigable waters. In the *Blaine* case, there was submitted to the people for a single affirmative or negative vote the proposition of bonding the city for specific sums for sites for fire houses, site for city stables, for the construction of fire houses, for a combined fire house and dock, for a police station, for an isolation hospital, for a bridge on Spokane avenue, and for a bridge on Westlake avenue. This was held to be violative of the constitution, art. 8, § 6, and the general law, in that it combined several nonrelated propositions. Speaking to that subject, we said:

"The vice of this method adopted by the city to compel an affirmative vote on all eight measures is readily apparent upon an examination of the propositions submitted, proposi-

tions in which there is nothing in common, nor any such unity of interest as would lead any one to either favor or disfavor all eight measures. Illustrating this view is the proposition for the two bridges. One calls for a bridge over the west waterway at Spokane avenue in the south part of the city, a matter in which the people of West Seattle and those interested in the waterways to the south are particularly interested, and which they deem of great value in the opening up of the Duwamish waterway scheme. The other calls for a bridge over the government canal at Westlake avenue in the northern part of the city, a project in which the people along the north end of Lake Union and the advocates of the government canal are deeply interested. There is nothing in common between these two propositions. One is a scheme for the development of the city to the north; the other a scheme for its development to the south. The people in these widely separated districts have no common interest in any local improvement."

And again, we said:

"Neither can they have their bridge unless they take city stables, a sub-police station, an isolation hospital, and other as dissimilar projects with it."

And we quoted with approval from *Stern v. Fargo,* 18 N. D. 289, 122 N. W. 403, 26 L. R. A. (N. S.) 665, as follows:

"The authorities are nearly unanimous to the effect that a proceeding by which two questions are submitted when such questions or their subjects and purposes are not naturally related or connected, is invalid and renders any election at which such questions have been submitted invalid."

A like view was announced in *McBryde v. Montesano,* 7 Wash. 69, 34 Pac. 559. We are, therefore, committed to the view that distinct, unrelated, and independent objects or purposes must be separately submitted by the ballot.

Counsel for the appellants, in his oral argument, stated that the true test of whether a proposition is single is, will it stand alone. This, we think, is but one of the tests of singleness, and might often be no test at all. The true

criterion is, are the several parts of the project so related that united they form in fact but one rounded whole. Either of two converging highways, or either of two public highways terminating upon a highway common to both, would stand alone, but there are few cases which would hold that bonds were invalid where the two were submitted as a single project. Again, we have no doubt that a proposition could be submitted as a unit for bonding the city of Seattle for the construction of one schoolhouse on Capitol hill and another on Queen Anne; or for the construction of isolation hospitals at points remote from each other, if the law permitted bonds for that purpose. Nor do we think a proposition for the construction of a trunk road with laterals could be regarded as double in its nature. The item for wharves and docks is strongly condemned as bearing no relation to the other parts. Suppose the matters had been separately submitted, and bonds for that item had been authorized and the others had failed to carry. The hypothesis, we think, demonstrates the fallacy of the appellants' contention. Experience has shown the wisdom of the public retaining control of such matters. The larger harbor would be incomplete if the public failed to provide aids for its utilization. Wharves and docks are but adjuncts to the harbor. They are but connecting links between the highways of the land and the highways of the sea. They are to sea commerce what a bridge which spans the stream is to land commerce. In the "Report of the Commissioner of Corporations on Transportation by Water in the United States, Part 3, Water Terminals," issued September 26, 1910, speaking of the importance of the public retaining control of terminal facilities, it is said:

"Private control of terminal facilities may seriously impair or practically destroy the real public character of the channels."

And again it is said:

"Control of the terminal facilities either of railroads or water lines means practical control of the routes themselves."

And again:

"This failure to combine the policy of river and harbor improvements with a comprehensive plan of cooperation for the construction and administration of. port terminals has operated to neutralize in considerable degree the value of such channel improvements."

A recent California case, *Clark v. Los Angeles*, 42 Cal. Dec. 25, 116 Pac. 966, is directly in point.   It holds, quoting from the syllabus which tersely and correctly interprets the decision:

"The submission to electors of a municipality of a proposition to incur a bonded indebtedness for harbor improvements by the construction of docks, wharves and warehouses, with the streets and waterways necessary or convenient for their use and for access to them from the land on one side and from the water on the other, is but the statement of a single purpose, plan or object."

In *Clark v. Los Angeles*, 41 Cal. Dec. 589, 116 Pac. 722, there was submitted as a single proposition:

"Shall the city of Los Angeles incur a bonded debt of $3,500,000 for the purpose of acquiring and constructing a certain revenue producing municipal improvement, to wit, works for generating and distributing electricity for the purpose of supplying said city and its inhabitants with light, heat and power, including the acquisition of lands, water rights, rights of way, machinery, apparatus and other property and the construction of electric generating works, substations, transmission and distributing lines, conduits and other works necessary therefor."

The court said that the proposition had but a single object and purpose.   In *Kemp v. Hazelhurst*, 80 Miss. 443, 31 South. 908, an election was held valid where the issuance of bonds had been authorized for the erection of waterworks and an electric light plant, submitted and voted upon as a single question.   The same view was taken in *Coleman v. Eutaw*, 157 Ala. 327, 47 South. 703.   In that case the court said:

"But where the purpose evolved in the blending is the product of two of the purposes enumerated in the act for

which bonds may be issued, and they might naturally and reasonably be deemed or made a part of one of a more general scheme, we are of the opinion that the act does not inhibit the exercise by the governing body of a discretion to blend into one proposition for submission to the voters such enumerated purposes; for instance, we merely suggest, the building of bridges and constructing streets."

*State ex rel. Columbia v. Allen,* 183 Mo. 283, 82 S. W. 103, is to the same effect. A different view was taken in *Stern v. Fargo, supra.* In that case the court said, the question is "Can one naturally be operated without the other." The same court, however, modified this statement in the later case of *Hughes v. Horsky,* 18 N. D. 474, 122 N. W. 799, saying that the *Stern* case held that the issuing of bonds for a waterworks system and an electric light plant involved two purposes not "naturally or necessarily connected"; but that the question of issuing bonds for the purpose of building a court house and jail may be voted upon as one proposition. In *Johnson v. Roddey,* 83 S. C. 462, 65 S. E. 626, an authorization of bonds submitted as one proposition for a waterworks plant and a sewerage system, or either, was held invalid. A similar view was taken by the same court in *Ross v. Lipscomb,* 83 S. C. 136, 65 S. E. 451, 137 Am. St. 794, and in *Chase v. Gilbert,* 83 S. C. 546, 65 S. E. 735. In *Linn v. Omaha,* 76 Neb. 552, 107 N. W. 983, bonds were held valid when authorized by a single vote for the construction of two engine houses to be located in different parts of the city and for the purchase of a site for one of them. In *Oakland v. Thompson,* 151 Cal. 572, 91 Pac. 387, bonds were authorized by a vote of the people for the acquisition of several distinct parcels of land, widely separated, for public parks, submitted and approved as one measure. The court said:

"The scheme is a single scheme, the purpose a single purpose, . . . The law does not contemplate, much less compel, that each piece and parcel of land which may be desired for a park should be voted upon separately. . . .

Certainly the plan adopted was within the discretionary power of the council under the law, and it enabled every voter to express himself as being for or against the whole proposition. More than this was not required."

In *State ex rel. School Dist. v. Gordon*, 223 Mo. 1, 122 S. W. 1008, it was held that bonds may be authorized by a single vote for building and furnishing a schoolhouse in one ward and for building an addition to and improving a schoolhouse in another ward in the district. The court said that there was an analogy between the constitutional inhibition against doubleness in a bill to be voted on by the lawmaker, and the rule against doubleness in a proposition to be voted on by the people; and that the mischief to be avoided was the same in both cases. In *People ex rel. Mariposa v. Counts*, 89 Cal. 15, 26 Pac. 612, the question presented to and approved by the voters was, shall the board of supervisors of the county be empowered to issue bonds in a sum stated, for the purpose of constructing two public wagon roads in the county, one from Bear Valley to Coulterville, and one from Mariposa to Yosemite, the ballots to be "For the issue of bonds," and "Against the issue of bonds." It was held that the proposition was single.

In *State ex rel. Lowman etc. Printing Co. v. Riplinger*, 30 Wash. 281, 70 Pac. 748, a submission of an amendment of an article of the city charter with five sections, calling for but one affirmative or negative vote, was held valid under a charter provision requiring that, if more than one amendment be submitted, they shall be submitted so that each proposed amendment may be voted upon separately without prejudice to the others. The court said that "it is the unity of subject that is demanded." In *Rock v. Rinehart*, 88 Iowa 37, 55 N. W. 21, it was held that a ballot submitting the question whether a court house, to cost not to exceed a sum stated, should be erected "from the proceeds arising from the sale of lands belonging to the county," contained but a single proposition, although the statute re-

quired an authorization by the people before either of the acts voted upon could be done. The court said there was but one object, "the erection of a courthouse." In *State ex rel. Horsley v. Carbon County* (Utah), 114 Pac. 522, a proposition to issue bonds in a sum stated for the completion and construction of twelve definitely located bridges and five culverts, and for the completing, improving, and repairing of a designated county road, was held to embrace but one "general object."

The following, among other cases, are relied on by the appellants: *Denver v. Hayes*, 28 Colo. 110, 63 Pac. 311; *Leavenworth v. Wilson*, 69 Kan. 74, 76 Pac. 400; *Woodlawn v. Cain*, 135 Ala. 369, 33 South. 149; *Cain v. Smith*, 117 Ga. 902, 44 S. E. 5; *Rea v. La Fayette*, 130 Ga.' 771, 61 S. E. 707; *Gray v. Mount*, 45 Iowa 591; *State ex rel. Bethany v. Allen*, 186 Mo. 673, 84 S. W. 531; *State ex rel. Joplin v. Wilder*, 217 Mo. 261, 116 S. W. 1087; *Garrigus v. Board of Com'rs*, 39 Ind. 66; *Lewis v. Com'rs of Bourbon County*, 12 Kan. 186; *Supervisors of Fulton County v. Mississippi etc. R. Co.*, 21 Ill. 338.

In the *Denver* case, eleven propositions, some of them bearing no natural relation to the others, were submitted as a unit. Some of the purposes were public sewers, parks, public squares, viaducts, reservoirs, refunding bonds, and improving the banks and channels of the Platt river. The election was held illegal. In the *Leavenworth* case, it was held that the combining of a proposition for the purchase of waterworks and for the building of a new plant was invalid, saying: "The subject of purchasing a particular plant already in existence is utterly diverse from that of building a new one." In the *Woodlawn* case, a proposition submitted as a unit to authorize a tax levy, for the purposes of paying interest on bonds and of improving and maintaining public improvements, was held to be dual in its nature, and to offend the provision of the constitution requiring that the "purposes" for which the special tax sought

to be levied shall be stated. In the *Cain* case the legislature enacted a law providing for a new charter for the town of Edgewood, and authorizing it to issue bonds not to exceed $10,000, the proceeds to be used for the erection of school buildings and purchasing sites for the same, the law to become effective upon its adoption by a two-thirds vote of the qualified electors of the city. The act directed that the ballots contain the words, "for bonds and adoption," and "against bonds and adoption." An election was held, and the required number of affirmative votes were given. It was held that the constitution forbade the submission of the question of the adoption of the charter and the issuing of the bonds as a single proposition, without giving the voters the privilege of adopting or rejecting one or both as their judgment dictated. It was said that the legislature had authority to submit to the voters as a unit the question of the establishment of schools, and the question as to whether the facilities for the schools should be secured by an issue of bonds.

In the *Rea* case, it was held that the question of issuing bonds aggregating $40,000—$25,000 for the purpose of establishing and maintaining a system of waterworks, $10,000 for the purpose of establishing and maintaining a system of electric lights, and $5,000 for the purpose of improving and extending the public schools of the city and providing adequate accommodations for school patrons and children, could not be combined and submitted to the voters as a single question. The court said that the rule was well settled in other jurisdictions, and upon what it regarded as sound principles, that two or more "separate and distinct" propositions cannot be combined and submitted to the voters as a single question, so as to have one expression of the voter answer all of them. It was further said that the combining of "several distinct and independent propositions" is violative of the spirit of the constitutional provision, that "no law or ordinance shall pass which refers to more than

one subject-matter." In the *Gray* case, there was submitted
to the voters of the county the question whether a certain
fund should be devoted by the board of supervisors of the
county to the erection of a court house at Guthrie Center
and a new high school in the town of Penora, in the propor-
tion of two-thirds to the former and one-third to the latter,
to be voted upon as a single question. The submission was
held invalid, as containing "two objects" and "two purposes."
In *State v. Allen*, it was held that propositions to the
voters of a municipality for the issuance of bonds for the
construction of a public building and for improvements of
the waterworks and electric light plants and extension of
the water mains and electric lines, cannot be submitted as
one proposition to be answered "Yes" or "No." The court
said that the submission contained "at least two separate
and distinct propositions." In *State v. Wilder*, it was held
that a vote authorizing the issuance of bonds for a sanitary
sewer in one district and a storm sewer in another district,
submitted and adopted as a single proposition, the voter
being required to answer "Yes" or "No," was invalid. This
case is distinguished in the later case of *State v. Gordon*,
*supra*. In the last three cases cited by the appellants, the
adoption by the voters of a proposition in aid of two rail-
roads, submitted as a unit, calling for only an affirmative
or negative vote, was held invalid.

While it is true, as appellants contend, that nonrelated
projects cannot be made a unit by the resolution of the
commissioners or by the evidence of civil engineers, such in-
formation may be used to get the relation of the several
parts of the proposition to each other and to the plan as a
whole. While it is not possible to distinguish some of the
cases on the facts, yet in the main it will be noticed that they
announce a common principle, viz., that a proposition con-
sisting of related parts can be submitted as a single question,
and that unrelated and diverse propositions must be sub-.
mitted separately. Some of the cases are based upon the

belief that the method of submission violates the provision of the constitution requiring that every act shall contain but one object which shall be expressed in the title. Others rest upon the belief that the method violates the other section of the constitution requiring the assent of a certain percentage of the voters of the county before bonds can be issued, in that such method does not give opportunity for that full, free, and intelligent assent contemplated by the constitution. Others rest upon the construction of the word "purposes," found in the constitution, statute, charter, or ordinance. Guided by the principles which we have stated, we are constrained to hold that, while the proposition is divided into four parts, taken together they form but one rounded project —the creation of a great harbor, by utilizing, developing, and uniting the waters which nature has so bounteously provided.

The appellants next contend that the appropriation for sites for wharves and docks, the language having been heretofore quoted, is illegal, because it combines several purposes in both the conjunctive and disjunctive. The resolution recites that this sum is to be expended for sites, wharves, docks, and other rights and interests necessary to the full enjoyment of the improvement as an entirety. The authorities cited by the appellants are cases where the entire sum authorized was to be devoted to one of two purposes, or to one of two corporations. The other rights and interests mentioned in the appropriation are but details which may arise in carrying out the enterprise. The amount of the bonds is fixed and definite, and not left to the discretion of the board of commissioners, as in *Schultze v. Township of Manchester*, 61 N. J. L. 513, 40 Atl. 589, and other cases cited by the appellants. Most of the authorities which they cite upon this proposition, which space does not permit us to review, are based upon the express language of the statute. The objection is without merit. *Sioux Falls v. Farmers'*

*Loan & Trust Co.*, 136 Fed. 721; *Clark v. Los Angeles,
supra; Seymour v. Tacoma*, 6 Wash. 138, 32 Pac. 1077;
*Griffin v. Tacoma*, 49 Wash. 524, 95 Pac. 1107; *Linn v.
Omaha*, 76 Neb. 552, 107 N. W. 983; *State ex rel. Columbia
v. Allen, supra; Strain v. Young*, 25 Wash. 578, 66 Pac. 64.

It is finally urged that the $600,000 is to be used in aid
of Commercial Waterway District No. 1, and the $50,000
in aid of Commercial Waterway District No. 2, and that
such purposes are not authorized by the validating act, Laws
1911, p. 3. The first sum is to be used for acquiring rights
of way and widening and deepening the channel of the Du-
wamish river "along the lines" laid out by Commercial Water-
way No. 1. The second sum is to be used for the purpose
of diverting the waters of Cedar river into Lake Washington
"along lines" adopted by Commercial Waterway No. 2. The
fact that the commissioners will follow plans adopted by
these districts does not make them aid bonds. The act
authorizes the county commissioners of any county of the
first class to engage in the several enterprises involved in
this suit, or to aid any of the parties named in the act in
the prosecution of such enterprises, and declares that "any
and every" of such purposes is a county purpose. The act
further provides that, where the issuance of bonds has here-
tofore been authorized within one year next prior to its
taking effect, and the vote was such as would have author-
ized the incurring of the indebtedness and the issuance of the
bonds had the act been in force, such authorization is vali-
dated and confirmed. The vote authorizing the issuance of
the bonds complied with these provisions. We have treated
the validating act as having only such force as it would
have had had it been a law at the time the bonding question
was submitted to the voters. This, we think, is its correct
interpretation. Believing that all of the substantial pro-
visions of the act have been complied with, we have not found
it necessary to consider or determine whether authority may

be found elsewhere in the statute for upholding the validity of the bonds.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, ELLIS, MOUNT, CROW, and MORRIS, JJ., concur.

CHADWICK, J., took no part.