**BEARDEN et, Plaintiffs, v. SHAKER HEIGHTS (City) et, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 723000. Decided May 5, 1960.

Marshman, Hollington & Steadman, Cleveland, for plaintiffs.
Walter C. Kelley, Jr., Shaker Heights, for defendants.
Squire, Sanders & Dempsey, Cleveland, Amici Curiae.

## OPINION

By DAY, J.

This cause came on for oral hearing and during the oral testimony the parties entered into a certain stipulation of facts and then requested an opportunity to submit briefs to the Court. The plaintiffs then filed a motion to be permitted to amend their petition after trial. This motion was granted as was a motion to amend the answer. Thereafter, the firm of Squire, Sanders & Dempsey requested permission of the Court to file a brief amicus curiae. This was opposed by the plaintiffs on the ground that the applicant had been connected with the matter at issue and that its position was not an independent one. The Court granted the application for leave to file the brief amicus curiae, After all briefs were submitted the Court took the case under advisement.

The issues in this case are not in themselves complex, but the factual considerations which resolve those issues are. Thus the Court has taken considerable time to study the excellent briefs and arguments of counsel for both sides, as well as the exhibits and the case and statutory law involved.

By way of review, this action was brought by certain taxpayers of the City of Shaker Heights against the city, its mayor and its financial director. After stating that the city is proceeding in a program for the building of a municipal pool and that the expenditure of the funds to build the pool is based on an authorization for the expenditure of certain bond revenue derived from a special bond issue passed by the voters of the City of Shaker Heights in November, 1958, and that the bond issue violates the "one purpose rule" and that the rate proposed to be charged per family for use of the pool is excessive and exorbitant, the plaintiffs then ask that this Court enjoin the expenditure of the funds for work on the Shaker Heights municipal pool and enjoin the City of Shaker Heights from issuing municipal pool bonds.

The amendment to the petition states that the defendants engaged in an extensive campaign to promote the bond issue and that as part of its campaign the city, or its administrative units, prepared and distributed circulars and pamphlets which indicated that the pool would be self-supporting. Plaintiffs then state that the bond issue on the

ballot did not indicate that the pool would be self-supporting and that the recreation board of the city after the ballot was printed and prior to the election, issued a statement and pamphlet to the effect that there was a fee program and that the pool would be self-supporting and not require the levy of additional taxes, and that these statements were contrary to the facts, misleading and deceptive. They further state that as a result of these statements the issue presented on the ballot was misrepresented and that, therefore, since the misrepresentation was material and substantial, the ballot was void and the election should be found by this Court to be void, and that the Court should find the city has no authorization for the spending of funds or the issuance of bonds.

The answer of the defendants specifically denies each and every allegation of the petition, and the amendment to the answer specifically denies the matter contained in the amendment to the petition.

During the trial the plaintiffs admitted that the issue relative to the rate to be charged per family for the use of the pool was prematurely raised and withdrew this issue from the consideration of the Court. Thus the Court is presented with two broad issues. First, were the representations made by the City such as could void the bond issue as set out in the ballot? And, second, did the ballot itself violate the "one purpose rule"?

The · principal evidence presented relative to claimed misleading statements by the counsel of Shaker Heights is a letter to the residents of Shaker Heights (Joint Exhibit J) and a postcard (Joint Exhibit Q) enclosed therein which conducted a survey relative to the desirability of the city building the swimming pool here involved. The letter to the residents of Shaker Heights indicated on the fourth page thereof that the council of the City of Shaker Heights wanted to know how many families would support the project on a self-sustaining basis. The enclosed business reply card was used as a basis for determining how many families would be willing to support the pool at a cost of approximaterly $45.00 per family or $25.00 for an individual per season. The evidence does not clearly indicate as to whether or not this survey was the sole basis for submitting the proposed bond issue to the voters, or even whether it was used as any criteria in submitting the proposed bond issue to the voters. The only indication in the record is that the returns of the cards indicated a substantial number of people were willing to pay the fee.

The evidence further indicates that after the bond issue was prepared the Shaker Heights Recreation Board prepared a questionnaire relative to the Shaker Heights swimming pool bond issue. The questionnaire entered as Defendants' Exhibit CC is in the form of questions and answers.

In their amendment to the petition as noted above, the plaintiffs state that these pamphlets were to the effect that these facilities would be self-supporting and would not require the levy of additional taxes. The exhibit indicates that 1800 of a necessary 2000 people by way of the business reply card have stated that they will subscribe to the pool on a fee basis. The questionnaire then answers the question as to why

the bond issue must be on the ballot and states that the full faith and credit of the city must be behind the bond issue in order to sell the bonds at a reasonable interest rate. It further answers the question as to why the bond issue on the ballot mentions a tax levy of .2180 mills. The questionnaire states "It is legally required that the ballot indicate the millage that would be required to retire the bonds if they were to be paid out of general taxes rather than revenue. City Council has pledged that it will use revenue from the sale of the annual pool subscriptions to pay **principal and interest on the bonds** rather than levy additional taxes." The questionnaire is then summarized and in the summation states that "* * * When the pool is built annual subscriptions will be sold to finance the operation of the pool and the repayment of the bonds. No tax increase is anticipated * * *." (Emphasis added.) Clearly it was the intention of the council not to anticipate an increase in taxes. Joint Exhibit C contains Resolution No. 58-146, Section 2 thereof states: "It is the intention of this council that in each year during the life of said bonds in which revenue and receipts from the operation of said swimming pool and other recreation facilities are available and applicable to the payment of the principal and interest of said bonds and are appropriated for such purpose, the amount of such tax shall be reduced by the amount of such revenue so available and appropriated." The council then in office could not bind future members, and neither the questionnaire nor the Resolution state that no tax increase is possible,—rather they state that there is no intention to increase taxes and that a tax increase is not anticipated.

The ballot itself was before the voters on election day. A sample of said ballot is entered as Joint Exhibit P and it is clear as to what tax may be levied upon passage of the bond issue as is the amount which may be levied. In part the ballot states "* * * and a levy of taxes be made outside of the ten mill limitation estimated by the county auditor to average .2180 mills for each dollar of valuation, which amounts to 2.180 cents for each one hundred dollars of valuation, for a maximum period of twenty (20) years to pay the principal and interest of such bonds." An individual voter reading this ballot could not be misled by the above language. He knew that if he was for the bond issue, the city of Shaker Heights could make a levy of taxes outside of the ten mill limitation to pay the principal and interest of such bonds. The letter to the residents, the resolution of council and the questionnaire by the Shaker Heights Recreation Board had all previously indicated that no tax increase was anticipated but that it was possible and, therefore, there was no misrepresentation which was material or substantial. On the contrary, the voter was more informed than is generally the case.

In addition to the letter from the council and the resolution by council and the questionnaire by the Shaker Heights Recreation Board, the Court has before it Plaintiffs' Exhibit 1 which is an advertisement put out by the League of Women Voters of Shaker Heights which states that the issue "**does not** increase your taxes" and then states "since those who swim would pay, passage would mean an olympic sized pool and wading pool in Thornton Park, at no expected increase in taxes." There

is no indication in the record that the League of Women Voters of Shaker Heights is an arm or part of the city or its administrative units, and if its advertisement is misleading, which it is not, it would have no pertinency to the issues raised in this case in any instance.

The final exhibit relative to this matter is a pamphlet prepared by the Citizens Committee For The Swimming Pool Bond Issue (Defendants' Exhibit AA). This pamphlet also indicates that the swimming pool is "to be paid by the users, not by taxes." In addition, the pamphlet indicates that the swimming pool issue is endorsed by "Your Neighbors" and then lists a series of individuals and their wives. It then states that it is endorsed by "The Mayor of Shaker Heights" and sets out a memorandum to the residents of Shaker Heights signed by Wilson G. Stapleton, Mayor, stating, in part, "* * * or shall we proudly endorse the 'construction—through-use' plan for the practical and re-presented outdoor swimming pool on Farnsleigh Road." The pamphlet then goes on to say that the pool issue is endorsed by the Recreation Board and states the names of the members of the Recreation Board. The pamphlet then explains in approximately the same language as the questionnaire prepared by the Shaker Heights Recreation Board as to why the issue must be submitted to the voter. The pamphlet then concludes by stating "We need your vote, not your money."

Obviously certain officials of the city and its administrative bodies took an active part in the preparation of this pamphlet even though it was not prepared or sent out by the city itself. This pamphlet could not be said to be misleading for the reason that a facsimile of the bond issue itself is printed on the cover of the pamphlet and the language of the ballot is clear that a levy of taxes may be made outside of the ten mill limitation. The remainder of the pamphlet is more puffing than anything else and can not be construed as either deceptive or misleading.

The voters of any community must expect certain groups to be interested in projects which they feel will be of benefit to the community and to actively solicit the votes of other members of the voting community in promoting these projects. Each voter knows that when he goes to the polls the issue that he is voting on is the issue which is presented on the ballot, and in the language of the ballot, and that no statement made by any individual or official can change that language.

The Court, for the reasons set out above finds that the representations by the Shaker Heights officials that the swimming pool would be self-supporting did not vitiate the election in any respect.

With respect to the second issue,—did the ballot itself violate the "one purpose rule" as set out in §133.10 R. C., In determining this issue the Court finds that it must first construe the language of the ballot itself, then apply the applicable statutes to said ballot and finally apply the case law.

The ballot itself states that bonds shall be issued for the purpose of "improving recreation facilities by constructing swimming pools and other fireproof structures and play areas and otherwise developing the sites therefor." The Court construes this language in a much narrower sense than either the defendants or the amicus curiae do.

They assert that the language permits the unlimited improvement of recreational facilities. By reading the language the Court finds that the bond issue is not for improving recreational facilities generally rather; it is for improving recreational facilities specifically by constructing swimming pools, and other fireproof structures in play areas, and otherwise developing the sites therefor. Thus the bonds could not be sold and a levy of taxes made outside the ten mill limitation to improve recreational facilities within the city by constructing play areas or fireproof structures without having them relate to the swimming pools. There is nothing in the evidence to show that any of the structures contemplated relate to anything but the swimming pools. The facts demonstrate that nothing extraneous is contemplated. The evidence is that there are to be two pools built, some bathhouse facilities, a sundeck contiguous to the pools, and a parking area close by. All these facilities are specifically related to the pools themselves.

Sec. 755.16 R. C., permits a municipal corporation to acquire property and operate playgrounds, play fields, gymnasiums, public baths, swimming pools, or indoor recreation centers. Sec. 755.16 R. C., supplements §717.01 R. C., which provides that a municipal corporation may "(X) acquire real property by purchase, gift or devise and construct and maintain thereon public swimming pools either within or without the limits of the municipal corporation." Separate and apart from paragraph (X) is paragraph (N) which provides that each municipal corporation may "provide land for and improve parks, boulevards, and public playgrounds." Sec. 133.10 R. C., provides that bond issues shall relate only to one purpose, and then states that one purpose includes "* * * in any case, all expenditures, including the acquisition of a site and purchase of equipment, for any one utility, building, or other structure, or **group of buildings or structures for the same general purpose,** or for one or more roads, highways, bridges, and viaducts included in the same resolution." (Emphasis added.)

All of these sections must be construed together. Thus the development of the site and the play areas and the fireproof structures must all be for the same general purpose, namely, constructing swimming pools. The inclusion of other unrelated projects to provide land for and improving parks and public playgrounds generally would have to be provided by separate resolution and submitted on a separate ballot if §717.01 R. C. (N) and (X), read in the light of §755.16 R. C., and limited by §133.10 R. C., are to have any real meaning.

The Court comes to its conclusion as to the construction of the statutes here involved by reason of two recent Ohio Supreme Court decisions. In the case of State, ex rel. v. Carney, 163 Oh St 159, 126 N. E. 2nd, 449, 56 O. O. 194, the Court held that a resolution may provide for the construction of subways rather than merely for the construction of one subway and that the plural properly expresses a single and not a multiple purpose. Thus, in the instant case both plaintiffs and defendants admit the fact that even though the resolution provides for the construction of swimming pools rather than for a single pool it does not express a multiple purpose. In coming to its conclusion in the Carney case, supra, the Court heavily relied upon the annotation found

in 4 A. L. R. 2nd, 617, and stated that for the purpose of applying the "one purpose rule," there must be a natural relationship between the various structures or objects which are to be built and that they must conform "to one rounded whole," see 4 A. L. R. 2nd 630.

This same reasoning was expressed in the case of **State, ex rel. v. Thompson, 167 Oh St 23,** 145 N. E. 2nd 668, **3 O. O. 2d,** 464. There the Court held that it was proper to combine in the same resolution a bond issue for the construction of fireproof school buildings and the provision for furniture and furnishings therefor, with a provision for the construction of non fireproof school buildings and the provision for furniture and furnishings therefor. The Court again applied the principle that there was a natural relationship between the various structures or objects which caused them to be united into one unit and form "but one rounded whole."

In the instant case it would be unreasonable to expect the City of Shaker Heights to construct a swimming pool or swimming pools without uniting into the resolution a provision for the construction of certain other structures and without providing for the development of the site. The pool standing alone would be virtually useless. It is only when the pool is constructed, bath houses are constructed and the site is developed to permit the residents to use that facility that the project becomes united and forms "but one rounded whole." This proposition is supported by the case of Blaine v. Hamilton, 64 Wash. 353, 116 P. 1076. In that case the county commissioners of King County in the state of Washington submitted to the voters of the county a single proposition calling for a vote of yes or no on the question of issuing bonds of the county, the proceeds of which were to be expended for the excavation of a channel for the government canal, connecting the waters of a bay with the waters of a lake, for acquiring rights of way for and in dredging and deepening the channel of a river, for diverting of the waters of a river into a lake and for acquiring for public uses sites for wharves and docks. The Supreme Court of the state of Washington held "that the several parts of the proposition were so related that they combined to form a single, entire subject—the making of the county's one harbor into a great harbor by utilizing, developing, and uniting the waters in and around it." The Court upheld the validity of the bonds.

Thus we see in the case just cited the purpose was the combination of many parts to form a single whole while in the instant case the purpose is to develop a site for a certain swimming pool or pools. This site as developed must form a single whole and must be united, but may involve expenditures beyond the mere building of a swimming pool.

Clearly the law as recited in the case of Blaine v. Hamilton, supra, is the law of Ohio for this is the case in 4 A. L. R., 2nd, upon which the Supreme Court relies in coming to its decision in both the Thompson case, supra, and the Carney case, supra.

The Court therefore finds that the ballot submitted to the residents of the City of Shaker Heights on Tuesday, November 4, 1958, did not violate the "one purpose rule" of §3310 R. C., and denies to the plaintiffs their prayer for injunction and other relief and grants to the defendants herein their costs. The Court has drawn and filed a Journal Entry in conformity with the above.