SCHNOERR, A TAXPAYER, APPELLANT, *v.* MILLER ET AL., APPELLEES.

[Cite as Schnoerr v. Miller, 4 Ohio App. 2d 99.]

(No. 9336—Decided December 23, 1963.)

*Messrs. Douglas & Carlier,* for appellant.
*Mr. John R. Gehrig,* for appellees.

HILDEBRANT, J. This appeal on questions of law and fact is from a judgment of the Common Pleas Court of Hamilton County, denying a permanent injunction, at the suit of a tax-

payer against the issuance of bonds in the amount of $250,000 by the village of Terrace Park for the purpose, as expressed on the official ballot, as being:

"For the purpose of paying for the construction of a public building and furnishing and equipping the same * * *."

It is stipulated by the parties that all procedural requirements have been met and that the village of Terrace Park does not have a charter form of government but has the powers conferred upon a municipality by the Constitution of Ohio, Section 3, Article XVIII, and the general laws passed pursuant thereto relating to the issuance of bonds.

The sole question is whether or not the form of the official questions and issues ballot submitted to the voters at the November 1961 municipal election contained an expression of the purpose of the proposed bond issue adequate to meet the requirements of the Constitution and statutes.

At the election, the bond issue passed by a vote of 540 to 420, exceeding the required 55% affirmative vote by 12 votes.

In the first defense of the answer, it is contended that appellant was precluded from bringing this action for the reason that a contest of the election is the exclusive remedy and that under Sections 3515.08 and 3515.09, Revised Code, he is out of time. The answer to that contention is found in the concurring opinion of Taft, J. (now Taft, C. J.), in *State, ex rel. Commrs. of Sinking Fund,* v. *Brown, Secy. of State,* 167 Ohio St. 71, at page 76, wherein it is stated:

"In cases involving the issuance of bonds or the levy of taxes, it may sometimes appear that this court permitted an attack on the validity of an election in other than an election contest. However, in such cases the decision has not resulted from allowance of an election contest in proceedings other than those representing a statutory election contest, but it has resulted from the finding of a failure to do something that the statutes mandatorily required should be done as a condition precedent to the issuance of the bonds or the levy of the tax. See *State, ex rel. Board of County Commrs.,* v. *Guckenberger, Aud.,* 165 Ohio St. 12, 133 N. E. 2d 323; *State, ex rel. Board of Education,* v. *Wheeler, Clerk,* 152 Ohio St. 101, 87 N. E. 2d 247; *State, ex rel. Curren, Dir.,* v. *Rees, Dir.,* 125 Ohio St. 578, 183 N. E. 432; *State, ex rel Jackson,* v. *Board of County Commrs.,*

122 Ohio St. 456, 172 N. E. 154; *Elyria Gas & Water Co.* v. *City of Elyria,* 57 Ohio St. 374, 49 N. E. 335.''

In addition to the general powers conferred upon a municipality by the Constitution and statutes, the Legislature has seen fit to grant specific powers, and Section 717.01, Revised Code—Powers of municipal corporations—provides in part:

''Each municipal corporation may:

''* * *

''(F) Construct infirmaries, workhouses, prisons, police stations, houses of refuge and correction, market houses, public halls, public offices, municipal garages, repair shops, storage houses, and warehouses * * *.''

Nowhere in the quoted section do the bare words, ''public building,'' appear.

Historically, through the years and in step with a changing society and times, the Legislature has deemed it necessary, expedient and in furtherance of the public weal to add to its enumeration of the specific powers of municipal corporations, powers previously deemed unnecessary or indeed unheard of, but as of now the Legislature has not affirmatively granted the specific power to a municipal corporation to provide or construct a bomb shelter, community blast and fallout shelter, or any facility whatever to protect against the threat of thermonuclear conflict.

Historically, also, this section was formerly a part of the Uniform Bond Act and the Legislature in adding, from time to time, new purposes for which bonds might be issued and new specific powers for municipalities by amendment, would seem to indicate an intent to limit those purposes and powers to those enumerated in the statute. The *amicus curiae* as bond experts in advising the village officials by letter, as shown in the record, that they would not approve a bond issue for the building of a bomb shelter, community blast and fallout shelter, or fallout shelter, without first getting approval of all the courts of Ohio, would seem to indicate a similar view as to the legislative intent. Section 133.09, Revised Code—Submission of question of issuing bonds to electors—provides in part:

''The taxing authority of any subdivision may submit to the electors of such subdivision the question of issuing any bonds which said subdivision has power to issue.''

Section 133.10, Revised Code—Resolution shall relate only to one purpose—provides in part:

"The resolution provided for in Section 133.09, of the Revised Code shall relate only to one purpose. 'One purpose' includes * * * in the case of a municipal corporation, any number of streets, bridges, and viaducts, including the municipal corporation's share in streets to be improved in part by assessment * * *."

Section 133.13, Revised Code—Ballot—provides in part:

"The form of the ballot to be used at the election provided for in Section 133.09 of the Revised Code shall be as follows:

" 'Shall bonds be issued by the . . . . . . (here insert name of subdivision) for the purpose of . . . . (here insert purpose of bond issue) * * *.' "

This court will confine its consideration of this case strictly to whether or not the ballot herein relates to only one purpose for the issuance of bonds under a specifically granted power of a noncharter municipality. Decisions upholding bond issues for new public purposes by charter municipalities are to be distinguished by reason of their charters, and we do not accept those citations as controlling in the case of a noncharter municipality.

### Statement of Fact.

In the summer of 1961, the village officials of Terrace Park, responsive to the threat of nuclear warfare posed by the Berlin crisis, in a special meeting of the council held on July 18, 1961, proposed to issue bonds for the construction of a public blast and radiation shelter.

With commendable caution, the village solicitor sought the opinion of experts who would be required to examine, approve and certify the proceedings, including the power of the village to issue bonds for the above-stated purpose. His report to council, by letter dated July 18, 1961, is set forth in full in plaintiff's exhibit A as follows:

"In connection with your special meeting of July 18, 1961, at which you propose to consider the initial legislation required for submission to the electors of the village at the November 7, 1961, election, of the question of the issuance of bonds for the purpose of paying for the construction of a public blast and radiation shelter, I advise as follows:

"I have consulted with * * * [name deleted] bond attorneys, in respect to this matter, for the reason and no public bond issue can be sold without the examination, approval and certification for the benefit of the buyers of all proceedings relating to the bond issue.

"The bond attorneys advise that the construction of a public blast and radiation shelter is a novel idea not heretofore considered by any municipality in Ohio and not covered under the uniform bond law section of the Ohio Revised Code. If the purpose of the bond issue is described on the ballot to be submitted to the electors at the November 7, 1961, election as 'Paying for the Construction of a Public Blast and Radiation Shelter,' the bond attorneys, before approving the sale of the bonds, will require that a test case be filed in the Hamilton County Common Pleas Court to obtain a judicial finding in respect to the validity of the bonds under the laws of Ohio.

"If the judicial finding in the Common Pleas Court is negative, appeals will be required to the Court of Appeals and, perhaps, the Ohio Supreme Court, in order to finally determine whether or not such bond issue is valid under the laws of Ohio.

"On the other hand the bond attorneys state at this time that they will approve a bond issue for the purpose of paying for the construction of a public building, irrespective of the specific use to be made thereof."

Plaintiff's exhibit B is in the form of an open letter signed by the mayor and all councilmen as such, and containing a facsimile or sample question and issues ballot, and stating issue No. 1 thereon to be:

"The bond issue for a 'Public Building' which is the Blast and Fallout Shelter."

Opposite the issue No. 1 bond ballot appears the following statement:

"This is where you vote on the construction of a public building as a Community Blast and Fallout Shelter. The council placed this issue on the ballot because we believed it was of such importance that *you* should have the opportunity to consider and vote on it."

The record is replete with similar statements as to the purpose of the bond issue on the part of a citizens' committee for

the bond issue and different individuals, together with sketches of floor plans of a fallout shelter and with articles in the public press (defendants' exhibits Nos. 4, 5 and 6, headlined: "Village seeks bomb shelter"; "Terrace Park to vote on fallout shelter"; and "Village Fallout Shelter Plan described at Terrace Park"). One article (defendants' exhibit No. 5) quoted the mayor as having said: "* * * the shelter would be large enough to house the 2,000 Terrace Park residents for two weeks. It won't be the most comfortable place in the world, but it will be safe"— and went on to report: "The shelter will have a roof of 12-inch concrete and be covered with three feet of earth. Ramps will lead to the entrances. For the present the building will be used for the village vehicles, offices and possibly an auditorium. It eventually will become the basement for a new municipal building."

From this record it becomes abundantly clear that the form of the ballot was designed and purposely limited to "a public building" in an attempt to accomplish a purpose not included within the specific powers of a noncharter municipality granted by law, and thus to legalize an issue of uncertain or doubtful legality and to accomplish indirectly what was feared could not be accomplished directly. We point out that, while the power to build a bomb shelter or fallout shelter is not specifically granted, neither has it been anywhere in the law prohibited, and this opinion in no wise impugns the rectitude, good intentions, sincerity or public spirit of any of the proponents of the issue, be they public servants or private citizens.

It is the policy of Ohio to adhere to the single-purpose rule, set as far back as *Elyria Gas and Water Co.* v. *City of Elyria,* 57 Ohio St. 374, wherein paragraph four of the syllabus states in part:

"* * * It is the policy of the statute that each measure for which it is proposed to issue and sell the bonds of the corporation shall stand on its own merits, unaided by combination with others, and that it be voted upon as an independent measure, by the council and electors, uninfluenced by such combination."

The rationale of the rule is set forth in 4 A. L. R. 2d 626, as follows:

"The object of the rule preventing the submission of propo-

sitions involving several and distinct structures or objects to the voters as one single proposition so as to compel the voters to accept or to reject all is to give the voters a liberty of choice to get what they want without the necessity of accepting something they do not want."

Directly in point here is *Allard* v. *Board of Edn. of Madison Twp. School Dist.*, 101 Ohio St. 469, wherein it was sought to combine the issuance of bonds to build a school building and acquire a site therefor with bonds to purchase motor trucks and school wagons—the court stated at page 471:

"While the requirement is made by various provisions of the law that boards of education shall provide adequate school privileges for the youth of school age, and in pursuance of that policy boards of education are required to provide means of transportation for pupils under certain circumstances, yet no authority has been expressly conferred to submit the question of issuance of bonds for such purpose under Section 7625, General Code, or other provision of the statute, and none can be implied."

Implicit in the single-purpose requirement is that the nature, kind, character or use as a valid public purpose appear from the original resolution of council and from the ballot itself by full or condensed statement thereof. The vice in this ballot is not in stating on its face a multiplicity of purposes, but in failing to state a single purpose authorized by law. The word, "public," is insufficient. The municipality cannot build a private building and can build only certain buildings approved by law as having a public use. The word, "building," reveals nothing as to possible use or purpose, single or multiple, and the ballot contains no condensed statement thereof.

The municipality cannot be bound by statements of political organizations or individuals relating to the purpose of a proposed bond issue. 45 Ohio Jurisprudence 2d 73, Section 52. This court is in agreement with the statement set forth in paragraph three of the headnotes of *Bearden* v. *City of Shaker Heights*, 83 Ohio Law Abs. 314, which states as follows:

"Each voter knows when he goes to the polls the issue that he is voting on is the issue which is presented on the ballot, and in the language of the ballot, and that no statement made by any individual or official can change that language."

This ballot is inadequate to express a single purpose only or to limit the issuance of bonds to any lawful purpose. Were this court to hold otherwise, the impact of this decision would be that any municipality could, by simply using this form of ballot, issue bonds at will without limit as to purpose and with any multiple or combination of purposes conceivable, as fixed possibly by individuals other than the voters and totally unauthorized to do so. To hold otherwise, this court feels, would also violate the inhibition against judicial legislation.

For the foregoing reasons, the prayer of the amended petition is granted, a permanent injunction will issue, and the defendants herein are permanently enjoined from issuing the bonds here in question.

*Injunction granted.*

HOVER, P. J., and LONG, J., concur.